## Meehan *v.* Edward Valve and Manufacturing Company.

[No. 9,876.    Filed October 10, 1917.]

1. MARRIAGE.—*Common-Law Marriage.—Validity.—Requisites.*— Although common-law marriages are in derogation of statute, they are recognized as valid and binding where made between parties of contracting capacity by their mutual assent, followed by cohabitation as husband and wife, together with other circumstances essential to the establishment of such a marriage. p. 343.

2. MARRIAGE.—*Common-Law Marriage. — Evidence. — Presumptions.*—To raise a presumption of common-law marriage, the evidence must be clear and convincing, and where there is evidence to negative such a presumption, it must fail.  p. 344.

3. MARRIAGE.—*Common-Law Marriage.—Contract.—Evidence.*— In order to consummate a valid common-law marriage, the conduct of the parties must be such as to show an intention to contract marriage and assume the relation of husband and wife, and such a marriage must appear either by the signature of the parties, where the contract is in writing, or by witnesses present when the agreement was made, and, in the absence of such evidence, the relationship may be proved by cohabitation, reputation, conduct, and the acts of the parties with respect to the marriage relation.  p. 344.

4. MARRIAGE.—*Common-Law Marriage. — Evidence. — Cohabitation.*—Cohabitation does not of itself constitute a common-law marriage, but is merely evidence of marriage, and, if the cohabitation was originally illicit, it is presumed to have so continued.  p. 344.

5. MARRIAGE.—*Common-Law Marriage. — Evidence. —* In a proceeding under the Workmen's Compensation Act, Acts 1915 p. 392, for compensation for the death of a servant, where applicant testified that she had entered into a verbal common-law marriage contract with deceased and that thereafter they lived together for a considerable period of time, but there was also evidence that on one occasion she asserted that she was married to another, that deceased stated that they were not married and that during the time they lived together decedent had an

undivorced wife living, the evidence is sufficient to warrant a finding that applicant was not married to deceased; especially as §8360 Burns 1914, §5325 R. S. 1881, makes a marriage absolutely void if either party has a wife or husband living at the time of its consummation. p. 345.

6. MASTER AND SERVANT.—*Workmen's Compensation.—Findings by Industrial Board.—Review.*—Where there is sufficient evidence to warrant a conclusion of the Industrial Board on a question of fact, the finding will not be disturbed on appeal. p. 346.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Alice Meehan against the Edward Valve and Manufacturing Company. From a judgment denying compensation, the applicant appeals. *Affirmed.*

*George E. Brannan* and *McMahon & Conroy,* for appellant.

*Miller & Dowling* and *Lyman, Adams & Bishop,* for appellee.

IBACH, P. J.—On January 19, 1916, John Meehan, an employe of appellee, was killed while engaged in the line of his employment. Appellant, upon the theory that she was the wife and sole dependent of the deceased, filed her application before the Industrial Board for an allowance under §38 of the Workmen's Compensation Act. Acts 1915 p. 392. Her claim was finally rejected by the full board on January 17, 1917, at which time, upon request of appellant, there was a finding of facts wherein all the material facts necessary to an allowance of her claim were found for appellant, except that she was not the wife of the decedent.

The errors complained of relate to the correctness of this finding, so that the decision of this appeal requires a consideration of the single question whether

1. appellant was the wife of decedent, notwithstanding the fact that there was no marriage

ceremony. While common-law marriages are in derogation of our statutes, still such marriages are recognized as valid and binding where made between parties of contracting capacity by their mutual assent, followed by cohabitation as husband and wife, together with such other circumstances as are essential to the establishment of such a marriage. *Compton* v. *Benham* (1909), 44 Ind. App. 51, 85 N. E. 365. To raise the presumption of marriage by such means, the evidence must be clear and convincing, and where there is legal evidence in the record to negative the legal presumption in favor of the marriage and from which a contrary presumption may arise, all former evidence falls or is neutralized. *Klipfel's Estate* v. *Klipfel* (1907), 41 Colo. 40, 92 Pac. 26, 124 Am. St. 96, 14 Ann. Cas. 1018, and cases cited.

We will not attempt to state the quantum of evidence necessary to the existence of a common-law marriage applicable to all cases. It is sufficient to state that such fact must appear either by the signature of the parties, where the contract is in writing, or by witnesses present when made; and if there is no such evidence, then it may be proved by cohabitation, reputation, conduct, and all other circumstances having to do with the acts and conduct of the parties with respect to the marriage relation. In short, enough must be said and done by the contracting parties to show an intention to contract marriage and assume the relation of husband and wife. Cohabitation does not of itself constitute a common-law marriage. It is merely evidence of marriage, and, if it is illicit in the beginning, it is presumed to continue. *Compton* v. *Benham, supra.* As bearing upon the same principle of law, see *McKenna* v. *McKenna* (1899), 180 Ill. 577, 54 N. E. 641.

A careful examination of the evidence in this case

convinces us that §8360 Burns 1914, §5325 R. S. 1881, had much to do with the disposition made of it by the Industrial Board. This section makes a marriage absolutely void where either party has a wife or husband living at the time of such marriage. Appellant testified that she and the deceased "drew up a contract between them that they would live together and be true to one another but it was not in writing, just ourselves were present at the Delmargo Hotel (Chicago). It was about ten o'clock in the evening, Mr. Meehan had made an appointment to meet me on that occasion, that they went together to a bedroom at the hotel and by that means we agreed to become man and wife." She had met deceased but once, about a year before, at a dance at Fox Lake, and that was the only time she had ever seen him before she met him in Chicago. They continued to live together at many different hotels and houses in Chicago, but it is a significant fact that the record nowhere contains any evidence of any neighbors or residents, or of the reputation of appellant and deceased as to marriage in any of the many communities in which they lived. This fact also doubtless had much weight with the Industrial Board, as it is the most usual way of proving marriage in such cases. It appears from the testimony of deceased's father that he visited the parties and found them living together and at one time deceased told him they were not married, and he asked why they did not get married, and deceased remarked that he had been married to two and he would never get married to the third. A sister of the deceased also testified that she met appellant some time after the date of the alleged marriage, when the deceased introduced appellant to her as his friend, Miss Rudolph. She further testified "about two years ago (which was about a year before deceased met his death) my brother was ill, appellant

was not with him at the time. He was working at Reagan's saloon and took sick. I found out my brother was sick and I talked to appellant and told her that Jack was sick and asked her if she would help him and she said, 'No'; she was married to a chauffeur and could do nothing for him."

There is other evidence in the record, independent of that which appellant insists was improperly introduced, to show that during all the time the relations between appellant and deceased were carried on he had a wife living, from whom he had not been divorced. So that a reading of the entire record convinces us that, notwithstanding the testimony given by appellant as to the original marriage agreement, there was then no present intention to assume the relation of husband and wife, at least, the conduct is sufficient to show that the deceased had no such intention as he doubtless knew that his status at that time prevented such a relation with appellant. As was said in *Armstrong* v. *Industrial Commission* (1915), 161 Wis. 530, 154 N. W. 844: "However innocent the plaintiff may have been, in law her relation with the deceased was an illicit one, and we think it would be neither good law nor good public policy to hold that such a relation established a family relation. * * * What we hold is that living with a man as his wife, when there is no marriage, does not create a family relation within the meaning of the statute." See, also, *Compton* v. *Benham, supra.*

Since the Industrial Board has passed upon the evidence in this case, and has held that appellant was not the wife of the decedent at the time of his death, 6. and since the record contains sufficient evidence to warrant that conclusion, it is not for this court to disturb the conclusion reached by the Industrial Board.

Judgment affirmed.

NOTE.—Reported in 117 N. E. 265. Marriage: validity of common-law marriage, L. R. A. 1915E 8, Ann. Cas. 1912D 597, 26 Cyc 836; presumptions in respect to same, 124 Am. St. 118, 26 Cyc 888. Workmen's Compensation Act: review of facts on appeal, Ann. Cas. 1916B 475, 1918B 647, L. R. A. 1916A 163, 266, 1917D 186.