DUNLOP ET AL. *v.* DUNLOP.

[No. 15,492.   Filed November 6, 1935.]

44

*B. S. Quigley, McAleer, Dorsey, Clark & Travis, W. T. Henderson* and *A. H. Boddy,* for appellants.

*Richardson, Greenwald & Greenwald* and *Oscar W. Baker,* for appellee.

BRIDWELL, J.—On the 22nd day of November, 1933, one Robert Dunlop, while in the employ of appellant H. H. Robertson Company, suffered an injury by reason

of an accident arising out of and in the course of his employment, from which he died. For a period of approximately two months prior to the date of the accident, the deceased employee, appellants Margaret M. and Edna P. Dunlop, and appellee Violet Ward Dunlop had been living together in East Chicago, Indiana, as members of one household. The mother of Margaret M. and Edna P. Dunlop, a former wife of the decedent, had died in the year of 1920. Appellee had been living with the deceased since May, 1926, and claims to be his widow by reason of a common-law marriage between them.

Following the death of the deceased employee, different applications for the adjustment of claims for compensation were filed with the Industrial Board of this state; the first being an application by appellant Edna P. Dunlop, to which appellant Inland Steel Company, the Liberty Mutual Insurance Company, and appellant Margaret M. Dunlop and her sister, the said Edna P. Dunlop, filed their application, naming as parties defendant thereto appellant H. H. Robertson Company, the Liberty Mutual Insurance Company and appellee, Violet Ward Dunlop. During the course of the proceedings before the Industrial Board, Edna P. Dunlop moved to dismiss the original application filed by her, but no ruling was made on this motion to dismiss, and the two applications were, by order of a board member, consolidated and set for hearing before one member of the board on January 23, 1934. At this hearing appellee Violet Ward Dunlop did not appear, either in person or by counsel, as she had received no notice of said hearing. At that time it was stipulated and agreed that Robert Dunlop was working for and in the employ of the H. H. Robertson Company on November 22, 1933, at an average weekly wage of $22.50, and that on said date he met with an accident arising

out of and in the course of his employment, from the results of which he sustained personal injuries and died on the same day; that the defendant, H. H. Robertson Company, had knowledge and notice of said accident, injury, and death, and furnished the necessary medical attention and hospitalization, and that the statutory burial allowance of $100.00 has not been paid; that prior to the filing of the petition a good faith effort was made to adjust the matters in dispute, which failed. It was also stipulated that appellants Margaret M. and Edna P. Dunlop were born as the fruits of a marriage of the deceased Robert Dunlop and one Elsie Dunlop, and that the said Elsie Dunlop died on June 27, 1920. It was further stipulated that appellant H. H. Robertson Company was a contracting concern under contract with appellant Inland Steel Company of East Chicago, Indiana, and that said H. H. Robertson Company had fully complied with section 68 of our Workmen's Compensation Law, and had furnished to said Inland Steel Company a certificate in accordance with the provisions of said section, which certificate was issued by the Industrial Board of this state on August 4, 1933. At this hearing the transcript of the record also discloses the following entry:

"It is requested by the plaintiffs Margaret M. and Edna P. Dunlop, together with the H. H. Robertson Company and the Liberty Mutual Insurance Company, defendants, by reason of the fact that it appears from the records that one Violet Ward Dunlop, residing at 106 South Street, Bay City, Michigan, may or may not have an interest in this cause of action, and that at this hearing she neither appeared in person or by counsel, and for this reason all of said parties move the Industrial Board that the said Violet Ward Dunlop be notified in such manner as the Industrial Board shall deem expedient, that she may, within thirty days from the entering of an award in this matter, notify the Industrial Board if she desires to appear before said

board and make proof in support of any claim or interest that she may claim to have in this cause of action."

Other stipulations entered into at the hearing on this date appear in the record, but, as they relate to the payment of compensations, if compensation is awarded, and to whom such payments may be 'made, they need not be set forth here.

Following this hearing it appears that notice was sent by the Industrial Board to appellee, but prior to the expiration of the time allotted for her to appear and assert such claims, if any, as she might have, the board member, on January 31, 1934, entered an award in favor of the two daughters for the full amount of the compensation payable to dependents of the deceased. Thereafter, and on February 5, 1934, appellee filed with the Industrial Board a petition asserting that she was the widow of the deceased by reason of a common-law marriage, the prayer of which was that the Industrial Board award and decree to her as such widow, her share and interest in and to the award made by the Industrial Board on January 31, 1934. Such further proceedings were had that on June 5, 1934, the award of January 31, 1934, was set aside at a hearing before a member of the board, and following this order an application for review by the full board was filed, which resulted, after hearing, in the full board entering an order or award setting aside the award made by a member on January 31, 1934, as null and void, and vacating all subsequent proceedings thereto, and it was ordered that said cause be set for hearing on the applications filed by Margaret M. Dunlop and Edna P. Dunlop, "and that all parties in interest should be notified, and such further proceedings should be had as might be necessary for determination of the issues involved." From this award of the full board no appeal was taken. There-

after, depositions were taken in behalf of appellee and filed with the Industrial Board, and the cause was again set for hearing before a board member on December 12, 1934, and at this time it was stipulated and agreed between all parties that the cause might be re-submitted for determination by the Industrial Board of Indiana upon the stipulations and evidence heretofore introduced and now of record in this cause. No award was made at this time and the board member again set said applications for hearing on January 7, 1935, at which hearing all interested parties appeared. A stipulation as to certain facts, including such facts as are herein set forth as having been stipulated as true, and also embracing a history of the proceedings previously had in this cause, including such proceedings as are disclosed by the record and herein, heretofore set out, was made and concurred in by the parties. Appellee then moved to publish the depositions taken by her and on file with the Industrial Board, to which the appellants separately objected. The objections were overruled and exceptions reserved, and appellants then moved to suppress the depositions and each of them "for the reason that the envelope shows upon its face, by the endorsement thereon, that said depositions were taken in the cause other than the cause now pending before the Industrial Board, and for the further reason that there was no notice served upon said defendants and said plaintiffs, and each of them, in the manner provided by law for the taking of said depositions." This motion was overruled and appellants excepted, and said depositions were introduced and read as evidence in the cause. At this hearing appellee also moved that she be made a party plaintiff in said application for compensation in lieu of being a party defendant, and the hearing member inquired of appellants if there was "any objection to that," to which inquiry appellants responded "no ob-

jection, it is all right," and the hearing member thereupon sustained said motion. Following this hearing, and on January 15, 1935, the board member made an award in favor of the two daughters and the alleged widow. Application to the full board for review of this award was filed in due course, heard on March 8, 1935, and on the 30th day of March, 1935, an award dismissing the proceedings as against the Inland Steel Company, ordering the defendants to pay the statutory $100.00 burial benefit, and granting compensation to appellants Margaret M. and Edna P. Dunlop and to appellee, Violet Ward Dunlop, in equal shares, was made, and it is from such award that this appeal is taken; the error assigned being that "the award of the full board is contrary to law."

All the evidence introduced in this cause in behalf of the appellee for the purpose of showing her dependency and right to compensation was by way of depositions taken in her behalf. Appellants claim error of law on the part of the Industrial Board in permitting said depositions to be published and introduced in evidence, and in overruling their motion to suppress the same. However, the record discloses that before the close of the hearing, appellants Margaret M. and Edna P. Dunlop expressly waived their objection or objections to the reading of the depositions in evidence, and agreed that such depositions may be considered as introduced and read in evidence; these two appellants being the ones who had offered the objections on account of insufficient notice, etc., and who made the motion to suppress. Under such a state of the record we think no error was committed in permitting these depositions to be read as evidence in the cause, and this court will not reverse an award on account of an alleged error which has been waived by the party against whom it was committed. See *Moran* v. *Miller* (1926), 198 Ind.

429, 439, 153 N. E. 890; *Judah* v. *Goldsmith* (1929), 90 Ind. App. 81, 83, 164 N. E. 496.

Appellants also contend that the board erred in overruling their motion to dismiss and strike from the files the items numbered from 1 to 6 in appellee's petition filed on February 5, 1934, and erred in overruling the motion to dismiss and strike said complaint from the record. We are of the opinion that these alleged errors are not available to appellants for reversal, in view of the fact that appellee was made a party defendant to the application of appellants Margaret M. and Edna P. Dunlop, and that, thereafter, upon her motion, she was made a party plaintiff in said application instead of party defendant thereto, with the consent of appellants and without objection from them to such action.

Appellants also assert that appellee failed to establish that a common-law marriage was consummated between appellee and the deceased Robert Dunlop, but proved only cohabitation and an illicit relationship in the beginning, which could not ripen into a common-law marriage by subsequent conduct of the parties in holding themselves out to all persons in communities where they resided as husband and wife.

It has been held in this state, and we believe correctly, that cohabitation does not of itself constitute a common-law marriage. It is merely evidence of marriage, and if such cohabitation is illicit in the beginning, it is presumed to be illicit until the contrary is shown. *Meehan* v. *Edward Valve, etc., Co.* (1917), 65 Ind. App. 342, 117 N. E. 265; *Compton et al.* v. *Benham et al.* (1909), 44 Ind. App. 51, 85 N. E. 365. However, a valid common-law marriage may be consummated, although the relations of the parties were at first illicit. 38 C. J. 1319, sec. 93.

It is also held that the contracting parties to a com-

mon-law marriage are husband and wife as fully and to the same effect and extent as if there had been a statutory and ceremonial marriage, and that compensation is properly awarded to the surviving widow of such a marriage when the death of the husband is due to an accident arising out of and in the course of his employment. *Vincennes Bridge Co.* v. *Vardaman* (1930), 91 Ind. App. 363, 171 N. E. 241.

That such marriages are as valid as a statutory and ceremonial marriage, and are valid in the State of Ohio, is held in *Holmes* v. *Pere Marquette R. Co.* (1927), 28 Ohio App. 297, 162 N. E. 675.

In the case of *Meehan* v. *Edward Valve, etc., Co.,* *supra,* this court, in speaking of common-law marriages, said (p. 344):

"We will not attempt to state the quantum of evidence necessary to the existence of a common-law marriage applicable to all cases. It is sufficient to state that such fact must appear either by the signature of the parties, where the contract is in writing, or by witnesses present when made; and if there is no such evidence, then it may be proved by cohabitation, reputation, conduct, and all other circumstances having to do with the acts and conduct of the parties with respect to the marriage relation. In short, enough must be said and done by the contracting parties to show an intention to contract marriage and assume the relation of husband and wife."

In *Vincennes Bridge Co.* v. *Vardaman, supra,* this court said (p. 364):

"Common-law marriages are in derogation of our statutes, but they are recognized as valid and binding when made between parties of contracting capacity by their mutual assent, either express or implied, and followed by cohabitation as husband and wife and such other circumstances as are essential to establish such a marriage."

We have carefully examined and considered the evidence in this cause in order to determine whether it is

such as to justify the Industrial Board in awarding compensation to appellee as the widow of the deceased by reason of a common-law marriage between them. Whether such a marriage was ever contracted, and whether it existed at the time of the death of the deceased employee, are questions of fact for the board to determine, and its decision will not be disturbed if there is competent evidence to sustain it.

There is evidence in the record to prove that the deceased and appellee became acquainted in the year of 1925, when both were working in the city of Toledo, Ohio. That in the year 1926 the deceased obtained employment in the city of Lorain, Ohio, and appellee accompanied him to said city, and they began living together in the relationship of husband and wife, and continued to so live together in different cities and states until the death of the deceased occurred on November 22, 1933. That such relationship was not intermittent in character, but was continuous from the time it began until death caused its termination, and during all this time the parties held themselves out to those with whom they came in contact as husband and wife. The mother of appellee testified that about eight years prior to the time she was being examined as a witness (which was in the year 1934), that her daughter and the deceased visited her at her home, and the deceased was then introduced to her as the husband of appellee.

Among the witnesses who testified in this cause was appellee, and while she was testifying as a witness as to her relations with the deceased, and the understanding they had about living together, questions were asked and answers given as follows:

Q.—"You say you had some understanding with him about living together. Was that under-

standing just between the two of you, or did you announce it to anyone else?"

A.—"No, we just made an agreement between ourselves that we would live together as man and wife."

Q.—"Just tell the Commission what he said to you and what you said to him."

A.—"He said now that his wife was dead, and that he was free, there was no reason why we couldn't live together as man and wife, so I agreed to."

The evidence further discloses that in approximately the year 1929, the deceased, his two daughters and appellee all began living together as members of one family, and continued to so do until the death of the father; that in the year of 1932 the family so constituted lived with the parents of appellee in their home at Bay City, Michigan, for approximately two months, and, thereafter, continued to reside in said city in resident properties rented by the deceased, as members of one family, until their removal to the city of East Chicago, Indiana, where they were all living together at the time of the fatal accident. Letters introduced and read in evidence show that the relatives of the deceased, including his mother, sister, and two daughters, recognized appellee as the wife of the deceased, and the evidence in its entirety is conclusive that he acknowledged her among his relatives, friends, and acquaintances of the communities where they resided as his wife. The evidence further proves that at the time appellee and deceased began living together as husband and wife each had the capacity to contract the marriage relationship.

We are of the opinion that the evidence is sufficient to show a common-law marriage between the parties involved, and that the Industrial Board was warranted in making the award entered.

Award affirmed, and increased 5 per cent as required by statute.