EDDINGTON *v.* EDDINGTON ET AL.

[No. 26,987. Filed February 7, 1938.]

*Milo C. Murray, Benjamin F. Wilson,* and *Clavin J. James,* for appellant.

*Steward & Steward,* for appellees.

ROLL, J.—Ernest B. Eddington died intestate in Lake County, Indiana, on February 23, 1935, and Benjamin Creswell was appointed administrator of his estate. The administrator filed an affidavit in lieu of an inventory, showing total assets belonging to the estate of $598.12, in cash. After this showing was made Hattie Eddington, one of the appellees herein, filed her verified petition herein stating that she and the deceased were married September 23, 1925, and lived together as husband and wife until the death of the said deceased February 23, 1935. Said petition further alleged that she, as the widow of said deceased, had paid the funeral expenses amounting to $374.00, and had also erected a tombstone at his grave at a cost of $60.00, and that she

had a preferred claim upon all the assets of the estate for said amounts; that the total amount of the estate, less cost and funeral expenses was less than five hundred ($500.00) dollars, and asked the court to direct the administrator to turn over to her as the surviving widow all of the assets of said estate under the provision of §6-1701 Burns Ann. St. 1933, §3243 Baldwin's 1934. After a hearing upon said petition the court found that the allegations of appellee's petition were true, and entered an order that the administrator turn over all assets of the estate to appellee, less $16.50 cost. After said order was entered, and before the administrator had turned over the assets, appellant Luella Eddington filed her verified petition, stating that she was a sister of the deceased, and as such was an interested party and that she considered herself aggrieved by the order of the court, made as above set out, and asked leave of court to intervene. This was granted and thereupon appellant filed her verified petition, wherein she alleged that the decedent had a lawful wife whom he had married on October 9, 1919, and who was alive and from whom he had not been divorced at the time he entered into a marriage contract with appellee, and asked that the court vacate and set aside the order heretofore made. A hearing was had upon this petition and the court found in favor of appellee. Appellant's motion for a new trial was overruled. Error is assigned on the ground that the court erred in denying appellant's motion to set aside the order and overruling her motion for a new trial.

The evidence was stipulated, and shows, in substance, that Ernest B. Eddington was married to one Mattie Eddington on October 9, 1919, and that they lived together as husband and wife until January 13, 1922. That on October 1, 1924, Mattie Eddington filed a suit for a divorce from Ernest B. Eddington in the Lake

Superior Court, Room 3, and that afterwards on January 13, 1926, a judgment was entered decreeing a divorce in favor of Mattie Eddington. At the time the divorce proceedings was commenced, Ernest B. Eddington was a resident of Gary, Indiana, and was served with notice of the filing of said divorce suit by the said Mattie Eddington, but shortly thereafter left the State of Indiana and moved to the city of Chicago, and while residing in Chicago, on September 21, 1925, married appellee Hattie Eddington. That thereafter he and the said Hattie Eddington returned to Gary, Indiana, where he and the said Hattie Eddington lived together as husband and wife until about nine months previous to his death, when decedent went to the Hines Hospital, at Hines, Illinois, where he died. Upon the above facts the trial court held that appellee Hattie Eddington was the widow of Ernest B. Eddington and as such widow was entitled to take his estate.

The question presented by this appeal is whether Hattie Eddington is the lawful widow of Ernest B. Eddington, deceased. It will be noted that at the time the deceased, Ernest B. Eddington, married Hattie Eddington on September 21, 1925, he had a lawful wedded wife, Mattie Eddington. But it is further noted that after Ernest B. Eddington married Hattie Eddington, the said Mattie Eddington obtained a divorce from Ernest B. Eddington on January 13, 1926, and that Ernest B. Eddington and Hattie Eddington continued to live together as husband and wife until the death of the said Ernest B. Eddington on February 23, 1935, a period of more than nine years after the divorce was decreed.

The question presented here has been decided by this court on several occasions.

In the case of *Teter* v. *Teter* (1884), 101 Ind. 129, 132, 133, the question involved the marital status be-

tween a husband and wife who were married while the husband had a lawful living wife by a former marriage, but the former wife obtained a divorce after her husband had remarried. The question of the validity of the second marriage was an issue in that case, as in the present case. It was said in that case:

"In the last decision made by this court in this controversy, it was held that there was no valid decree of divorce rendered by the court of common pleas of Muskingum county, in the suit instituted by Clayton's former wife, for the reason that the suit was dismissed before a final judgment had been entered, and we were bound to presume that the judgment of dismissal was right. It was also held that the decision in *Light* v. *Lane*, 41 Ind. 539, required us to decide that if the man had a living wife, his subsequent marriage was void. We held further, that the presumption in favor of the validity of marriage in cases where the parties acted in good faith and cohabited as husband and wife, believing that there was a valid marriage, was one of very great strength, and that it was not overcome by the evidence adduced on the former hearing. . . .

"We are firmly impressed with the belief that it is our duty to carry the rule, of which we have spoken, to its full extent, and hold that the continuous living together as husband and wife of Mr. and Mrs. Clayton, their acts as such, their well founded belief in the validity of their formal marriage, the husband's recognition of that relation after the divorce obtained by his first wife left him free to enter into a matrimonial engagement, the second wife's firm faith from first to last that she was lawfully married, the declarations of the parties that they were married, the acknowledgement of the appellee as the child of the marriage bed, create a presumption of marriage too strong to be overcome by the general statement of the husband, when on the witness stand, that there was only one marriage. Our conclusion is dictated by sound principles of public policy, and just principles of morality. We violate no rule of law in holding this. There was a time when no impediment to Clayton's second marriage existed, and the strong and almost conclusive presumption from the facts developed by

the evidence is, that there was present in the minds of the parties the mutual consent which gives validity to marriages even though there is no formal solemnization. It is not the formal ceremony that creates the marital relation. If the matrimonial engagement is entered into from pure motives, and the connection is not formed for the purpose of illicit sexual commerce, there may be a valid marriage although there is no formal celebration. The intention to assume the relation of husband and wife, attended by pure and just motives, and accompanied by an open acknowledgement of that relation, is sufficient to constitute a marriage. An adulterous connection, entered into without any intention to marry, can not operate as a valid marriage, but a connection, formed from pure motives and entered into with the intention of creating the relation of husband and wife, may establish such a marriage as the law will respect. Persons may be punished for not obtaining licenses to marry, or for not taking steps to secure a proper record of the marriage, but there may, nevertheless, be a valid marriage. The want of form, or the lack of ceremonial rites, does not impair a marriage contract, in cases where it is entered into from good motives and with an intention to contract a present marriage, and is followed by an open acknowledgement of the marital relation."

Chancellor Kent says:

"No peculiar ceremonies are requisite by the common law to the valid celebration of the marriage. The consent of the parties is all that is required." 2 Kent Com. 87.

In *Hutching* v. *Kimmell* (1875), 31 Mich. 126, 130, the court said:

"Whatever the form of the ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage."

This rule seems to be well supported by the authorities. *Meister* v. *Moore* (1877), 96 U. S. 76; *Dickerson* v. *Brown* (1873), 49 Miss. 357.

The facts show that the ceremonial marriage of Ernest B. Eddington and Hattie Eddington celebrated on the 21st day of September, 1925, was void and of no force or effect, as a marriage. But from the 13th day of January, 1926, down to the date of his death on February 23, 1935, there was nothing appearing of record that would prevent Ernest B. Eddington and Hattie Eddington, appellee herein, from entering into a valid common law marriage. This question was recently discussed by this court in *Langdon* v. *Langdon* (1932), 204 Ind. 321, 183 N. E. 400.

We find no reversible error. Judgment affirmed.