ARGIROFF *v.* ARGIROFF.

[No. 27,157. Filed March 6, 1939.]

*James A. Collins* and *Frank A. Symmes,* for appellant.

*Thomas C. Tumboree* and *Frank W. Martin,* for appellee.

TREMAIN, C. J.—The appellee filed an action in the Superior Court of Marion County against the appellant for a divorce in which she alleged that she and appellant duly entered into a common-law marriage in 1928 and continued to live as husband and wife until a recent date, at which time they separated. Pending the action she filed a verified application for an allowance for support. To this application the appellant filed a verified answer in which he denied that a marital relation existed between them. He denied that they were married, ever agreed to live together as husband and wife, or entered into any contract which would amount to a common-law marriage.

Upon the issue thus formed a trial was had in which a number of witnesses were examined. At the conclu-

sion of the hearing the court awarded to the appellee the sum of ten dollars per week for her support, to which award the appellant excepted, and filed this appeal in which he asserts that the decision of the court is not sustained by sufficient evidence and is contrary to law.

It is his position that an award for support *pendente lite* can be made to the wife only where a legal marriage has been solemnized pursuant to the statutes of the state, and specifically points out that Section 3-1216 Burns' Ind. St. 1933 (Section 923 Baldwin's 1934) provides that the court may make an allowance pending a petition for a divorce which will insure *to the wife* an efficient preparation of her case. It is his position that the appellee in this case is not a *wife* within the contemplation of the statute. He also contends that where the appellant, as in this case, denied the marriage under oath the court was without jurisdiction to enter an order against him to pay support money.

The proof introduced before the court at the hearing was contradictory and presented a question of fact for the trial court to determine.

The parties agree that the regulations of marriage and divorce are prescribed and regulated in this state by legislative enactment. *Sweigart* v. *State* (1938), 213 Ind. 157, 12 N. E. (2d) 134. Notwithstanding the statutory regulations pertaining to marriage and divorce the courts of this state have recognized the existence of common-law marriages. *Meehan* v. *Edward Valve, etc., Co.* (1917), 65 Ind. App. 342, 117 N. E. 265; *Vincennes Bridge Co.* v. *Vardaman* (1930), 91 Ind. App. 363, 171 N. E. 241; *Lowrance* v. *Lowrance* (1932), 95 Ind. App. 345, 182 N. E. 273; *Dunlop* v. *Dunlop* (1935), 101 Ind. App. 43, 198 N. E. 95; *Hummel* v. *State* (1920), 73 Ind. App. 12, 126 N. E. 444.

In the foregoing cases and many others which could be cited the court was called upon to determine the status of a wife to claim property or property rights where she relied upon a common-law marriage. None of the authorities cited, nor is any found in Indiana, which involve an action for divorce.

It is a well settled principle that in an action for an allowance *pendente lite* the merits of the petition for a divorce cannot be investigated and are not before the court. *Gruhl* v. *Gruhl* (1890)., 123 Ind. 86, 23 N. E. 1101. The matter before the court does not require such investigation, and it is proper to say at the outset that the court is expressing no opinion upon the merits of the main controversy, or of what should be its final determination. That question will be before the trial court on the final hearing of the divorce action.

The court is now called upon to determine the question of whether or not the trial court was authorized under the facts and the law to make an allowance for the benefit and use of the wife. In making such allowance it has been held that the action of the trial court will be reviewed only where there has been an abuse of its discretion. *Henderson* v. *Henderson* (1887), 110 Ind. 316, 11 N. E. 432; *Gruhl* v. *Gruhl, supra; Sellers* v. *Sellers* (1895), 141 Ind. 305, 40 N. E. 699; *McCue* v. *McCue* (1898), 149 Ind. 466, 49 N. E. 382.

In *Meehan* v. *Edward Valve, etc., Co., supra,* a common-law wife filed a claim before the Industrial Board for compensation on account of the death of her common-law husband. Her right to assert such claim was contested. In discussing the question the court in that case said (p. 344):

"While common-law marriages are in derogation of our statutes, still such marriages are recognized

as valid and binding where made between parties of contracting capacity by their mutual assent, followed by cohabitation as husband and wife, together with such other circumstances as are essential to the establishment of such a marriage. *Compton* v. *Benham* (1909), 44 Ind. App. 51, 85 N. E. 365. To raise the presumption of marriage by such means, the evidence must be clear and convincing, and where there is legal evidence in the record to negative the legal presumption in favor of the marriage and from which a contrary presumption may arise, all former evidence falls or is neutralized. *Klipfel's Estate* v. *Klipfel* (1907), 41 Colo. 40, 92 Pac. 26, 124 Am. St. 96, 14 Ann. Cas. 1018, and cases cited.

"We will not attempt to state the quantum of evidence necessary to the existence of a common-law marriage applicable to all cases." To the same effect is *Vincennes Bridge Co.* v. *Vardaman, supra.*

*Hummel* v. *State, supra,* involved a question of an order of the court requiring a father to support the children born of the common-law marriage. It was held that he was liable for their support, and, in a discussion of the common-law marriage, the court made use of the following language (p. 16):

"This relation (common-law marriage) they could not cast aside by their own caprice any more than they could cast aside a statutory marriage."

*Lowrance* v. *Lowrance, supra,* was an action to quiet title to real estate wherein a common-law marriage was involved. The court there stated (p. 355) that:

"It seems to be well settled in this state, as well as in other jurisdictions, that, although the relations of the parties were at first illicit, they are not thereby precluded from thereafter contracting a valid common-law marriage."

*Dunlop* v. *Dunlop, supra,* involved a common-law marriage between the parties and the right of the wife to receive compensation there awarded by the Industrial

Board. That opinion enters into a lengthy discussion as to such relationship, and whether the facts may or may not be sufficient to establish a common-law marriage. Among other things the court concluded as follows (p. 50) :

"It is also held that the contracting parties to a common-law marriage are husband and wife as fully and to the same effect and extent as if there had been a statutory and ceremonial marriage . . ."

This question is discussed at length in *Boulden et al.* v. *McIntire* (1889), 119 Ind. 574, 21 N. E. 445, wherein the court quoted from Bishop on Marriage and Divorce, using the following language (p. 580) :

"Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether *regular or irregular,* and whatever the form of the proofs, the law raises a strong presumption of its legality; not only casting the burden of the proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. So that it can not be tried like ordinary questions of fact, which are independent of this sort of presumption."

18 R. C. L. 499, section 80, makes use of the following language in discussing rights acquired by common-law marriage:

"Every marriage in this country if valid is valid for all purposes and is attended with all the civil rights and obligations which the law confers and imposes upon persons who enter into the marriage relation. Hence a common law marriage, once established, is as valid as a ceremonial or statutory marriage, not only in all civil proceedings but also in that exacting proceeding, a prosecution for bigamy."

9 R. C. L. 433, section 237, in discussing the question of divorce and separation, uses this language:

"To warrant a decree of divorce it is essential that the marriage relation exist between the parties upon whom the decree may operate, and the existence of the marriage relation must be proved by the complainant by a preponderance of the evidence. Proof of marriage by cohabitation and repute may be made in a suit for divorce as well as in other cases."

*Lavery* v. *Hutchinson* (1911), 249 Ill. 86, 94 N. E. 6, Am. Ann. Cas. 1912A, 74, discusses at length the rights and relationship of the parties to a common-law marriage, and determines that a common-law marriage is as valid in that state as a statutory marriage, and then makes use of this language (p. 93) :

"Every marriage in this state is a marriage for all purposes and is attended with all the civil rights and obligations which the law confers and imposes upon persons who enter into the marriage relation."

The status and relationship of the parties to a common-law marriage are discussed exhaustively in *Brinkley* v. *Brinkley* (1872), 50 N. Y. 184, 10 Am. Rep. 460, wherein the question of a temporary allowance for the support of the wife was under consideration and wherein an award was made. In discussing the question the court said (p. 193) :

"That where there has been a marriage in fact, though its commencement was not according to the decent and recognized forms and ceremonies usual in society, and which, though not indispensable for its validity, are yet sanctioned by law; in an action by the wife for divorce or by the husband for a decree that the marriage is null, in which the putative wife avers the existence and legality of the marriage, though the alleged husband denies it; the court may, in its discretion, allow to the putative wife temporary alimony and money to carry on the action from the means of the alleged husband.

". . . It may be said, too, that for the purposes of an application for temporary alimony there will not need that the fact of marriage be so conclu-

sively established as for the purpose of permanent alimony, or any other ultimate purpose of the action. It is for the interest of society and in aid of public policy that where the married relation has been in fact assumed, it should not easily and capriciously be laid aside; and where it is averred by the putative wife and denied by the alleged husband, if she makes a reasonably plain case of its existence, she should be furnished with means of temporary support and of conducting the suit until the truth or falsehood of her allegations can be ascertained by the proofs formally taken in the case."

From a reading of the evidence introduced before the trial court it clearly appears that the court was justified in awarding to the wife ten dollars per week for her support pending the suit. There is evidence that the parties lived together since 1928; that the wife received mail addressed to her by her marriage name; that she and her husband attended social gatherings together, and visited friends; that she was introduced by her husband as Mrs. Argiroff. Even if the burden were upon her, because of the verified answer of the appellant, to establish by a preponderance of the evidence the facts alleged, it appears that such facts have been established, sufficient to justify an allowance for support *pendente lite*.

No reversible error has been presented. The judgment of the lower court is affirmed.