REGER *v.* REGER.

[No. 30,052. Filed November 14, 1961. Rehearing denied December 21, 1961.]

304

*Salyer & Mattingly, Charles B. Salyer, Lawrence Booram* and *DeArmond, Booram & DeArmond,* all of Anderson, for appellant.

*William L. Peck* and *Peck, Scott & Shine,* of counsel, of Anderson, for appellee.

ARTERBURN, J.—This is an appeal from an interlocutory order in a divorce case in which the appellant was ordered to pay the sum of $400.00 as suit money, the additional sum of $1800.00 as attorney fees and the sum of $40.00 per week for the support of the appellee and the minor child of the parties.

The appellant filed a verified complaint in which he alleges that the parties were married on February 29, 1956 and separated on July 23, 1960, after he learned that appellee had a husband living at the time of their marriage. He asked relief in the alternative that the marriage be declared void *ab initio*, or that the marriage be declared voidable because of fraud and misrepresentation or that he be granted a divorce on the grounds of cruel and inhuman treatment, and custody of the child.

Appellee filed a cross-complaint in two paragraphs, asking for a divorce (1) from the statutory marriage on the grounds of cruel and inhuman treatment and (2) from the common-law marriage on the grounds of cruel and inhuman treatment, and for the custody of the child.

The appellant takes the position that in an action to annul a marriage void *ab initio*, a court has no authority or jurisdiction to make any allowance to a destitute wife for her defense. We have decided this question contrary to the appellant's contention in the companion case of *State ex rel. Reger* v. *Superior Court* (1961), 242 Ind. 241, 177 N. E. 2d 908. We there held that there is no reason for distinction in the respect urged between an action to declare a marriage voidable or void in equity. Cases there cited support such conclusion. If a party feels there is enough of a semblance of a marriage existing that he desires an official adjudication to avoid it, then the wife should be given the opportunity to defend in equity. *Wiley* v. *Wiley* (1919), 75 Ind. App. 456, 123 N. E. 252.

The appellee under oath alleges that she and appellant in good faith believed she was divorced from

her first husband at the time of the marriage to the appellant; that the trial court failed to make a record of the granting of such divorce, although the judge at the time stated to her in open court that the divorce was granted. The appellee further, by way of "confession and avoidance", alleges that after she and her husband had discovered that no record of the first divorce had been made by the court, she permitted her first husband to be granted a divorce by default, and she sat mute in court at the time of the hearing thereof on October 17, 1957. She further alleges that appellant and she agreed that a second marriage ceremony would not be necessary and that they accepted each other as husband and wife and would not disclose to their child or their friends the divorce record difficulties.

We thus have a number of issues presented which might result in the validity of a marriage when a hearing upon the merits takes place. Then, in such event, the issue of whether there are or are not existing meritorious grounds for the divorce will also have to be determined.

> "The evidence of both the plaintiff and defendant disclosed that they were duly married. Whether either is entitled to have the marriage annuled is a matter that may be adjudicated in the main action. It is not before the trial court in this merely ancillary proceeding and hence is not before us in this appeal." *Pry* v. *Pry* (1947), 225 Ind. 458, 75 N. E. 2d 909.

On this appeal from an interlocutory order for allowance of expense money, we are left only with the consideration of what evidence is necessary to support the trial court's order. The intent of the legislature and the courts of equity in making allowances pendente lite in such cases is to give the pur-

ported wife the financial ability to procure counsel and evidence for a fair trial, with reasonable support for her needs during that period. Not only the parties, but the State have a concern in the marriage status and the children involved. It follows, therefore, that proof must be made that the wife has no funds and that the husband's financial condition is such that he is able to make such payments. No issues are raised in this appeal with reference to those aspects of this case. No claim is made that the allowances are excessive.

What, then, is the additional quantum of evidence necessary to make out a case to support the order for allowances? We have little authority in this State other than rather vague and general statements that in hearings for support and allowances pendente lite, the court will not consider evidence on the merits of the main action. 10 I. L. E., Divorce, Sec. 72, p. 601; *Gruhl* v. *Gruhl* (1890), 123 Ind. 86, 23 N. E. 1101; *Pry* v. *Pry* (1947), 225 Ind. 458, 75 N. E. 2d 909; *Argiroff* v. *Argiroff* (1939), 215 Ind. 297, 19 N. E. 2d 560.

The statute pertaining to divorce proceedings does not fix the quantum of proof necessary. It authorizes a judge to make orders "relative to the expenses of such suit and attorney fees as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof." Burns' §3-1216.

An examination and careful reading of the cases and authorities seem to show that in *divorce actions* where proof of the marriage has been established or both parties admit the validity of the marriage, the court will not go into the *merits of the cause* for a divorce. In such a case, if the court

believes the wife is in good faith in making a defense or in asserting her cause of action, it may make the allowance accordingly. 27A C. J. S. *Divorce* §§208(1) —208(4), pp. 898-904; *Gruhl* v. *Gruhl* (1890), 123 Ind. 86, 23 N. E. 1101; *Argiroff* v. *Argiroff* (1939), 215 Ind. 297, 19 N. E. 2d 560.

The law has been summarized as follows:

> "*Necessity of existence of marital relation.*—The right to temporary alimony depends on the establishment of the marital relation, the burden of proof of which is upon the wife. A prima facie showing of such relation will usually suffice. A less degree of proof is required than on the final hearing of the cause, and when there is a fair probability at such hearing that the marriage will be proven, temporary alimony will be allowed. There is a presumption of validity of a formal marriage, which has been consummated. A marriage de jure need not be shown, as temporary alimony may be allowed where the marriage is simply de facto, so also in the case of common-law marriage. But temporary alimony will be denied where it is clear that the marriage was void ab initio, and the wife knew it to be so. So, it will be denied where the wife admits in her answer that the marriage is a nullity." Keezer, Marriage and Divorce, pp. 650-652, §585, (3rd Ed. 1946).

When the action is to void or annul a marriage, it is incumbent upon the wife to make a prima facie showing that the marriage is not void or voidable and that she maintains a defense or cause of action in good faith. However, if her pleadings and statements show clearly without contradiction that the marriage is void *ab initio* and there is no existing marriage it has been held that the court has no authority to make any allowance on her behalf, since she has no defense. *Brown* v. *Brown* (1945), 223 Ind. 463, 61 N. E. 2d 645; *Ulrey* v. *Ulrey* (1952),

231 Ind. 63, 106 N. E. 2d 793; 35 Am. Jur. *Marriage* §70, pp. 225, 226.

In the case before us the appellee admits that the original marriage ceremony between her and the appellant was void because at the time (unknown to each) her first marriage had not been dissolved by a divorce, yet by way of such confession she avoids the consequences by alleging that thereafter, when the legal impediment was removed by a later divorce, she and the appellant became married under the common law.

A summary of the law is to be found in an annotation in 11 A. L. R. 2d 1040, §2, at page 1041:

> "In the absence of statute, it is a general rule recognized by practically all of the courts that a *de facto* marriage is a necessary prerequisite to the granting of alimony, counsel fees, and suit money in actions for divorce or alimony and suits for separate maintenance.

> "A marriage must be alleged in the putative wife's petition, and if such marriage is denied in the answer, must be proved to the satisfaction of the court. The courts do not agree as to the quantum of proof which the petitioner must produce, but most courts *require a prima facie* case of sufficient evidence to raise a presumption of marriage. The defendant must repel such presumption; otherwise, the petition will be granted. The court is not, however, required to go into the merits of the cause, . . .

> "If the defendant admits a marriage ceremony but denies its validity, the burden rests upon him. If the defendant establishes a prior divorce between the parties, the petition of the putative wife will be denied.

> "Of course, where the action is instituted by the husband against the wife, the general rule

■ is that if the existence of the marital relation is in actual dispute and clear proof is not made against its validity, the wife may be allowed alimony pendente lite. Ex parte McLendon (1940), 239 Ala 564, 195 So 733." (Our italics)

We are thus brought to a consideration of the record and evidence viewed most favorably in support of the trial court's order.

In addition to the verified pleadings and petitions of the parties related previously, the evidence and record at the preliminary hearing for allowances shows that the appellant brought the action against the appellee in her "married name" as "Louvenia Reger"; that they lived together as husband and wife following their marriage ceremony and following the appellee's subsequent divorce; that they have two children born to them; that they took part in normal social activities together, including those in connection with the schooling of their older child; that they were addressed as "Mr. and Mrs. Reger" and appellee drew and signed checks on appellant's bank account as "Louvenia Reger".

The appellant cites *Anderson* v. *Anderson* (1956), 235 Ind. 113, 131 N. E. 2d 301 and, relying thereon, urges upon us that under the evidence no common-law marriage between the parties could exist. It is pointed out that during the period that the appellee was not divorced from her first husband, marriage between the appellant and appellee was impossible and was void (Burns' §44-101); that the relationship between the parties therefore was adulterous; that the same relationship and cohabitation continued after the divorce was granted from the first husband and such illicit relationship did not change in charac-

ter. Cohabitation itself does not constitute a marriage. *Bolkovac* v. *State* (1951), 229 Ind. 294, 98 N. E. 2d 250; *Meehan* v. *Edward Valve, etc., Co.* (1917), 65 Ind. App. 342, 117 N. E. 265; *Dunlop* v. *Dunlop* (1935), 101 Ind. App. 43, 198 N. E. 95.

It is further pointed out that on January 1, 1958 the following statute became effective:

> "All marriages known as 'common law marriages' entered into subsequent to the effective date of this act [§§44-111, 44-112] shall be and the same are hereby declared null and void." Acts 1957, ch. 78, §1, p. 138, being Burns' §44-111, 1952 Replacement.

The quotation marks in the act about the words "common law marriages" have some significance. In *Anderson* v. *Anderson, supra,* the evidence showed the parties entered into an adulterous relationship and cohabited together voluntarily. The relationship continued for some number of years, with full understanding on the part of each of the parties thereto. There was no attempt to go through the formality of a civil marriage. The entire reasoning of the opinion in the *Anderson* case is based upon the voluntary illicit relationship of the parties. The case is easily distinguishable on the facts from the present case.

Accepting the evidence most favorable to the trial court's order and finding, we may conclude that both appellant and appellee innocently believed there was no legal impediment to their marriage; that in good faith, with the best of motives, they entered into the marriage ceremony, believing the first marriage of the appellee had been legally dissolved by divorce. Both parties assumed their responsibilities as a husband and wife respectively. Two children were born

from such union. Thereafter, a previously unknown defect in the legality of the marriage ceremony arose to plague both of them.

We do not believe the statute cited or the common law under *Anderson* v. *Anderson, supra,* is so callous to the sensibilities of the parties and to the interests of society that it will designate such a relationship, entered into innocently and in good faith by the parties, as adulterous, leaving them subject to the same censure and liabilities as the parties in *Anderson* v. *Anderson, supra*. The first ceremony at least created a *de facto* marriage. There existed "color of legality" by reason of the marriage ceremony entered into in good faith. Such a relationship may be distinguished from what are commonly known and defined in the statute as "common-law marriages". Those words in the vernacular mean a relationship which normally has its origin in adultery or without benefit of any formal ceremony. Webster's New Collegiate Dictionary, Second Edition, defines common-law marriage as "An agreement between a man and a woman to enter into the marriage relation without *ecclesiastical or civil ceremony*." (Our italics) 8 Words and Phrases 132.

Burns' §44-111, outlawing "common law marriages", we note, was enacted by the legislature shortly after the opinion in the case of *Anderson* v. *Anderson, supra,* was handed down on January 13, 1956.

Following the enactment of this statute there has been considerable concern revealed in legal publications as to the consequences which would result were the statute applicable to cases such as we have here, where the parties have *innocently* entered into a marriage ceremony and through some technicality it is

void or voidable as a result of a discovery made some number of years thereafter. 34 Ind. L. J., p. 643, at p. 659; Res Gestae, Vol. 1, No. 6, September 1957, p. 1.

These legal papers pointed out at the time the problems arising where the person performing the marriage ceremony is not an ordained minister, is not a judge or justice of the peace but only an imposter, or where a proper return is not made, or where the parties have reasonable grounds to believe a former spouse of one has died, to mention only a few such legal impediments.

> "Be all that as it may though, our legislature has decided, and perhaps rightly so, that the whole business is so naughty that its evil displaces its good and it should be done away with. So be it. However, it isn't quite that easy . . ." Res Gestae, Vol. 1, No. 6, September 1957, p. 15.

> "The abolition of common law marriage in Indiana, in addition to creating doubt as to the formalities essential to a valid statutory marriage, has assured at least one unjust result under the statutes relating to the capacity of persons to marry. As presented to the Indiana courts the problem will be whether a marriage may be sustained which was contracted in accordance with the statutory formalities, but to which an impediment unknown to the parties and later removed existed at the time of solemnization. Under the Indiana statutes a marriage is void when either of the parties has a husband or wife living at the time the marriage is contracted, or when either party is insane.

> . . . . .

> " . . . Thus, a man who hears a court decree that his wife is divorced from him and, relying on the decree, marries again, may find when his second wife dies that he was not married to her at all if his first wife's divorce was never formally entered of record as a result of the court costs not having been paid. This would follow although his first wife without his knowledge

had obtained a later divorce." 34 Ind. L. J., p. 643, at pp. 658, 659.

The statute has ramifications which spill over into the Workmens' Compensation and Social Security acts and probate proceedings, to mention but a few areas where the law intended to throw about the marriage relationship certain protective measures for the benefit of dependents.

Are these attempted marriages made in good faith and in compliance with all color of legal formalities, to be stricken down and placed on the same level as a so-called "common law marriage" such as is condemned in *Anderson* v. *Anderson, supra*? There the parties knowingly ignored the law. We cannot believe it was the intention of the legislature to place the two situations upon the same level, with the same dire consequences. Where the parties have been in the utmost good faith in entering into a marriage relationship, going through the legal formalities for that purpose, but are ignorant of a legal impediment raised by the law, the law should seek to alleviate, so far as possible, the hardships occasioned in the interest of the family, the children, and the marriage status. On the other hand, it was said in *Anderson* v. *Anderson, supra,* where the cohabitation was illicit in its origin and there was no excuse for failing to go through with the legal ceremonies of a marriage, that such relationship should not be encouraged or tolerated by the law.

In the *Anderson* case it is said that evidence of an oral contract not witnessed by a third party is not sufficient alone to establish a common-law marriage out of the relationship exhibited in that case because of the likelihood of fraud. In the case before us there is no need for such a rule.

*Teter* v. *Teter* (1885), 101 Ind. 129, 51 Am. Rep. 742 emphasizes the distinction we have made. That case involved the marital status of parties who were married while the husband had a lawful wife by a former marriage. The former wife obtained a divorce after her husband had remarried. The question of the validity of the second marriage was in issue in that case, as in this case. The court there said:

" . . . We held further, that the presumption in favor of the validity of marriage in cases where the parties acted in good faith and cohabited as husband and wife, believing that there was a valid marriage, was one of very great strength, and that it was not overcome by the evidence adduced on the former hearing. . . .

"We are firmly impressed with the belief that it is our duty to carry the rule, of which we have spoken, to its full extent, and hold that the continuous living together as husband and wife of Mr. and Mrs. Clayton, their acts as such, their well founded belief in the validity of their formal marriage, the husband's recognition of that relation after the divorce obtained by his first wife left him free to enter into a matrimonial engagement, the second wife's firm faith from first to last that she was lawfully married, the declarations of the parties that they were married, the acknowledgement of the appellee as the child of the marriage bed, create a presumption of marriage too strong to be overcome by the general statement of the husband, when on the witness stand, that there was only one marriage. Our conclusion is dictated by sound principles of public policy, and just principles of morality. We violate no rule of law in holding this. . . ."

To the same effect see: *Pry* v. *Pry* (1947), 225 Ind. 458, 75 N. E. 2d 909; *Eddington* v. *Eddington* (1938), 213 Ind. 347, 12 N. E. 2d 758; 19 I. L. E., Marriage, Sec. 24, p. 342.

The above cases bear out the policy of the common law to protect the innocent parties caught in the

predicament such as contended here. In other fields, innocent parties are protected by a *de facto* recognition supported by color of authority. 22 I. L. E., Officers, Sec. 5, p. 202; 6 I. L. E., Corporations, Sec. 11, p. 447.

> Statutes in derogation of the common law are strictly construed. There is good reason here for such construction. 26 I. L. E., Statutes, Sec. 174, p. 364.

There is no necessity for our extending the application of the statute to those cases where there has been a good faith effort to comply with the marriage laws.

We therefore conclude that where the parties in good faith have gone through the legal formalities necessary to consummate a marriage and through innocent ignorance they are unaware of a legal impediment that exists preventing such marriage, and thereafter the legal impediment is removed or disappears, a continued living together of such parties as husband and wife raises a presumption of a marriage which is not nullified by the statute (Burns' §44-111) since that statute in its application is limited to the type of common-law marriages referred to in *Anderson* v. *Anderson, supra.*

We hold accordingly that there was sufficient evidence before the trial court from which it could find that a prima facie marriage existed between the parties.

We find no merit in the contention that there was error in permitting the attorney for appellee to

make the affidavits for and on her behalf with reference to the allegations concerning the grounds for an allowance of attorney fees and support and expenses.

The interlocutory order appealed from is affirmed.

Landis, C. J., Achor, Jackson and Bobbitt, JJ., concur.

## On Petition for Rehearing

ARTERBURN, J.—The appellant has asked for a rehearing in this appeal and points out an error in the statement in the opinion where we state that the appellant and appellee "took part in normal social activities together, including those in connection with the schooling of their *older child.*" This is a misstatement, since the child was not of school age. We should have stated that the two children of the former marriage of the appellee were the subject of the school activities.

The evidence does show that they were registered at school when they first entered under the name of their father; that thereafter the registration was changed to "Reger" because the appellant objected to the use of the father's name in his presence. They continued to use the name Reger with the consent of the appellant during their schooling and while the appellant and appellee lived together.

The misstatement in the opinion is not material and does not change the essential facts upon which it is based.

The petition for rehearing is denied.

Achor, C. J., Jackson, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 177 N. E. 2d 901. Rehearing denied 178 N. E. 2d 749.