Adkins and Others *v.* Holmes and Wife.

Petition by *H.* and wife against *B.* and the heirs at law of *A.* for dower, on behalf of the wife, who is alleged to have married *H.* since the death of *A.* The petition alleged that *A.* died in 1843, seized of certain land described; that *B.* had an interest in one of the tracts of the land; that, in 1843, the plaintiffs made a demand for said dower, which was refused. The petition claimed damages for the withholding of the dower. *B.* pleaded that he purchased 60 acres of said land from *A.* before his marriage with the female plaintiff; that he paid the purchase money to *A.* and his administrator; that he commenced a suit in chancery against said female defendant and the heirs of *A.*, and that he obtained a decree vesting the title to said 60 acres in him, and that a commissioner appointed executed a conveyance to him, said commissioner having reported the same to the Court. He further alleged that the said female plaintiff was perpetually enjoined from interrupting him in the enjoyment of said 60 acres. Demurrer to the plea sustained. Some of the defendants pleaded that the marriage of *A.* to the female plaintiff was null and void, she being his niece by affinity. Demurrer sustained to this plea.

The infants, by their guardians *ad litem*, pleaded that, as to the matters contained in the petition, they neither admitted nor denied the same. Another plea was filed alleging, in general terms, that the female plaintiff was not at any time *A.'s* lawful wife. Judgment was rendered against all the defendants for the dower claimed, and against the heirs for damages.

*Held*, that the Court erred in sustaining the demurrer to *B.'s* plea; and that the demurrer to the plea, alleging the marriage void, was correctly sustained.

*Held*, also, that the plea of the infants, by their guardians *ad litem*, could not benefit them, the petition being a proceeding in law and not in chancery. *Held*, also, that the judgment for damages was too large.

*Held*, also, that the plea averring generally that the marriage was unlawful, by traversing no other material allegation, admitted all the material allegations in the petition except the one traversed.

Where evidence is objected to, the record must show that the cause of objection was pointed out at the time, or the evidence will be considered as not having been objected to.

APPEAL from the *Decatur* Probate Court.

Blackford, J.—This was a petition in the Probate Court of *Decatur* county, filed by *James S. Holmes* and *Nancy*, his wife, against *Bradley Adkins* and the heirs at law of *Martin Adkins*, deceased. The suit is for dower on behalf of the female plaintiff, who is alleged to have married the other plaintiff since the death of said *Martin*. The petition alleges that said *Martin* died about the month

May Term,
1850.

ADKINS
v.
HOLMES.

of *January*, 1843, seized of various tracts of land situate in said county, which tracts are particularly described in the petition; that the female plaintiff was the lawful wife of said *Martin* at the time of his death, and had been so several years previously; that said *Bradley Adkins* has an interest in one of the said tracts of land, and that the other defendants are the heirs at law of said *Martin;* that about the 20th of *October*, 1843, the plaintiffs made a demand of the defendants for said dower in said lands, which demand was refused. The petition also claims damages for the withholding of the dower.

The defendants all appeared to the suit.

To the petition as regards 60 acres of land, (describing the same,) part of one of the tracts mentioned in the petition, the said *Bradley* pleaded, in substance, as follows: That he purchased said 60 acres of land from said *Martin* long before the latter's marriage with the female plaintiff, for 975 dollars; that he paid said *Martin* the whole of the purchase-money, except 229 dollars, which balance he has since paid to said *Martin's* administrator; that since the last named payment, to-wit, on the 28th of *April*, 1843, the defendant commenced a suit in chancery in the *Decatur* Circuit Court, against said female plaintiff, as said *Martin's* widow, (she being then *sole* and unmarried,) and the heirs of said *Martin*, to obtain the legal title to said 60 acres of land; that, afterwards, at the fall term, 1843, of said Court, a decree in said chancery suit was rendered, vesting the title to said 60 acres of land in this defendant, which decree required that the defendant should execute, within a specified time, to this defendant, a conveyance for said 60 acres of land, and provided that, in case of their default, one *H. S. Christian* should, as commissioner, execute such conveyance. The plea further alleges that said female plaintiff was, by said decree, perpetually enjoined from interrupting this defendant in the full enjoyment of said 60 acres of land; that the then defendants having failed to make said deed within the time, the said commissioner, on their behalf, afterwards, to-wit, on the 16th of *April*, 1844, conveyed said 60 acres

of land to this defendant; that the conveyance of the commissioner, duly acknowledged, was reported by him to said Court at the spring term, 1844, and was afterwards, in *May* of that year, delivered by him to this defendant, all of which will more fully appear by the record.

May Term,<br>1850.<br>———<br>ADKINS<br>v.<br>HOLMES.

General demurrer to this plea, and demurrer sustained.

There was also a plea, by some of the defendants, to the following effect: That said *Martin*, in his lifetime, to-wit, on the 1st of *January*, 1836, at said county, was the lawful husband of one *Elizabeth Adkins*, and continued to be so until her death in 1837; that the said *Elizabeth*, was the sister of one *John Drake;* that the female plaintiff was the legitimate daughter of said *Drake*, and the niece, by consanguinity, of the said *Elizabeth;* that said *Martin*, in 1842, after said *Elizabeth's* death, married the female plaintiff, his niece by affinity; which marriage was null and void.

This plea was demurred to generally, and the demurrer sustained.

Some of the defendants, who were infants, pleaded, by their guardians *ad litem*, that they believed that said *Martin* owned the lands mentioned in the petition, and that, as to the other matters in the petition, they neither admitted nor denied the same.

There is one other plea. This plea alleges, in general terms, that the female plaintiff was not, at the time of said *Martin's* death, or at any other time, his lawful wife.

To the last plea the plaintiffs replied that the female plaintiff was the lawful wife of said *Martin*, &c.

The cause was submitted to the Court and judgment rendered against all the defendants for the dower claimed, and against the heirs for damages.

We think the Court erred in sustaining the demurrer to the plea of *Bradley Adkins*. The decree relied on was founded on a contract for the sale of the 60 acres tract, entered into by said *Martin* long before his marriage with the female plaintiff. " As a general principle," says Chancellor *Kent*, " it may be observed that

the wife's dower is liable to be defeated by every subsisting claim or incumbrance in law or equity, existing before the inception of the title, and which would have defeated the husband's seizin. An agreement by the husband to convey before dower attaches, will, if enforced in equity, extinguish the claim to dower. In equity, lands agreed to be turned into money, or money into lands, are considered as that species of property into which they were agreed to be converted; and the right of dower is regulated in equity by the nature of the property in the equity view of it." 4 Kent, 50. The suit by this defendant, *Bradley Adkins*, was brought against the female plaintiff while she was *sole*. The petition does not state when the marriage between the present plaintiffs was solemnized, and, for aught shown by the petition and plea, the decree may have been rendered before that marriage. Supposing, however, that the marriage took place pending the suit, still, the decree, whilst it is unreversed, is binding, not only on the female plaintiff but on her present husband also. Where a *feme sole*, pending an action of ejectment against her, marries, a judgment in the suit, afterwards rendered against her in her original name, was held to entitle the plaintiff's lessor to the possession of the premises. *Doe* e. d. *Taggard* v. *Butcher*, 3 M. & S. 557. The decree before us establishes the fact, that the land in question is not subject to the dower claimed by the petition. The plea of *Bradley Adkins* is, therefore, valid.

The demurrer to the plea alleging the female plaintiff's marriage with *Martin Adkins* to be void, on account of their relationship, was correctly sustained. The marriage, according to the plea, was solemnized in 1842, and is, therefore, governed by the statute of 1838. That statute enacts " that male persons of the age of 18 years, and female persons of the age of 14 years, may, when they are not prohibited by the laws of *God* from so doing, be joined in marriage." R. S. 1838, p. 410. For the laws of *God* thus referred to, we must look to the 18th chapter of Leviticus. But we do not find there any express pro-

hibition of such a marriage as the one before us. Nor, indeed, do we think the prohibition is so clearly deducible from the words there used as to justify us in saying this marriage is unlawful. But if this construction of the law be incorrect, still the plea we are now considering is not sustainable. The said statute of 1838 does not declare marriages within the prohibited degrees to be void, and such marriages, therefore, can only be regarded as voidable. Justice *Story* says, " that incestuous marriages by the *English* law are not, however, deemed, by the common law, absolutely void; but they are voidable only during the lives of the parties; and if not so avoided during their lives, they are deemed valid to all intents and purposes." Story's Conflict of Laws, s. 114. Chancellor *Kent* uses similar language. He says the canonical disabilities, such as consanguinity and affinity, and corporeal infirmity, existing prior to the marriage, render it voidable only, and such marriages are valid for all civil purposes, unless sentence of nullity be declared in the lifetime of the parties; and it cannot be declared void for those causes after the death of either party. But the civil disabilities, such as a prior marriage, make the contract void *ab initio*, and the union meretricious. 2 Kent's Comm. 95. The following is Lord *Coke's* language: " And the bishop, upon an issue joined in a suit of dower, *quod nunquam fuerunt copulati legitimo matrimonio*, ought to certify that they were coupled in lawful marriage, albeit the man were under 14 or the wife above 9 and under 12. So it is, if a marriage *de facto* be avoidable by divorce in respect of consanguinity, affinity, pre-contract, or such like, whereby the marriage might have been dissolved and the parties freed *a vinculo matrimonii*. Yet, if the husband die before any divorce, then, for that it cannot now be avoided, this wife *de facto* shall be endowed; for this is *legitimum matrimonium*, (as in the other case when the wife is *infra annos nubiles*,) *quoad datim*." Co. Litt. 33. The same doctrine will be found in the following authorities: 1 Blacks. Comm. 434.—2 Rosser on Husband and Wife, 462.—Shelford on Marr. and Divorce,

May Term,
1850.

ADKINS
v.
HOLMES.

154.—*Guthings* v. *Williams*, 5 Iredell, 487.—*Sutton* v. *Warren*, 10 Metcalf, 451.—*Bonham* v. *Bladgley*, 2 Gilman, 622. We are, therefore, of opinion that even if this marriage were within the Levitical degrees, the plea in question could not be sustained. It would be objectionable for not showing that the marriage had been dissolved in the lifetime of the husband.

It may be proper to mention that the law in *England* has been recently changed, and marriages within the Levitical degrees are there now, *ipso facto*, void, and not merely voidable. 5 and 6 Will. 4. The same change has been made in this state. R. S. 1843, p. 598. A marriage here now within the prohibited degrees is as absolutely void as the marriage of a man to a second wife, living the first.

The plea of some of the infant defendants, by their guardian *ad litem*, neither admitting nor denying, &c., can be of no benefit to them; this petition being a proceeding not in chancery but at law. R. S. 1843, p. 805.

The only plea in the cause, which led to an issue in fact, is the one which avers generally that the female plaintiff was never the lawful wife of *Martin Adkins*. That plea selects and traverses one material allegation in the petition, and is silent as to the others. The consequence is, that all the material allegations in the petition, except the one traversed, (there being but one plea,) must be considered as admitted on the trial. *Bonzi* v. *Maxwell*, 4 Mann. & Grang. 295.—*Cooke* v. *Blake*, 1 Welsb., Hurls., & Gordon, 220.—*Jackson* v. *Baxter*, *May* term, 1848 (1).

The transcript contains all the evidence, and the defendants contend that it does not sustain the judgment. The evidence of the female plaintiff's marriage with *Martin Adkins* was as follows: First, a marriage license, issued on the 2d of *November*, 1841, by the clerk of the *Decatur* Circuit Court, for the marriage of the two persons last named; secondly, the certificate of a person styling himself a justice of the peace, entitled "State of *Indiana*, *Dearborn* county," and dated the 22d of *July*,

1842. This certificate states that the person giving it had, on the 17th of *July*, at said county, by virtue of the license, married the two persons last above mentioned; thirdly, evidence that those persons, namely, the female plaintiff and *Martin Adkins*, were reputed in the neighborhood of their residence as husband and wife, from the date of said marriage up to the death of the person last named.

The transcript states that all the evidence was objected to by the defendants. But we have frequently held that such objections amount to nothing. *Russell* v. *Branham*, 8 Blackf. 277.—*Galbreath* v. *Doe*, id. 366. The ground of the objection must be pointed out when the objection is made, or the evidence will be considered as not having been objected to. Considering the evidence, therefore, as before the Probate Court without objection, we cannot say that the finding of the issue for the plaintiffs should, on the weight of the evidence, be set aside.

The heirs contend that the amount of the judgment for damages is too large. It appears that the Court, in ascertaining the amount of damages, took into consideration the profits of the lands from the death of the husband. Whether that was right or not is the question now to be considered. By the common law the widow recovered no damages from the detention of her dower. They were first given by the statute of Merton, 20 Hen. 3. Doct. Student, 140. Our territorial acts of 1795 and 1807, and the state laws of 1818 and 1824, gave the widow damages from the time of the demand and refusal of her dower; she was also entitled to damages under the act of 1831, from the time of demand and refusal, provided there was no minor heir unrepresented by a guardian. R. C. 1831, p. 210. The act of 1838 is as follows: " In cases of demand and refusal to assign dower, *where there is no minor heir*, the widow shall be entitled to reasonable damages, from the heir or other person as aforesaid, from the time of such demand to the time of the assignment of her dower." R. S. 1838, p. 240. By the act of 1843, when a widow recovers dower in a suit against the heirs,

she is entitled to damages for the withholding of her dower, which damages are to be estimated from the death of her husband. R. S. 1843, p. 807. In the case before us, *as there were minor heirs*, the petitioners were not entitled, under the statute of 1838, to any damages. Their claim to damages depends entirely on the act of 1843. The husband died about *January*, 1843, and the dower was demanded in *October* of that year. The act of 1843 took effect in *March*, 1844. Under these circumstances we are of opinion that the damages recoverable against the heirs, in this case, are such as accrued after the act of 1843 took effect. As the Probate Court estimated the damages, not from the time the act of 1843 took effect, but from the death of the husband, the judgment for damages is too large.

There ought to have been a judgment by default, for want of a plea, rendered against the infant defendants, who neither admitted nor denied, &c. But the omission of such judgment is of no injury to the defendants. It is a mere defect of form and cannot be assigned for error.

No objection is made as to parties.

The judgment against the' heirs for dower is right, but it is erroneous as to the damages. The judgment against *Bradley Adkins* (his plea being good) is erroneous.

*Per Curiam.*—The judgment against the heirs for dower is affirmed, but the judgment for damages is reversed. The judgment against *Adkins* is reversed.

*A. Davison*, for the appellants.

*J. S. Scobey*, for the appellees.

(1) See 1 Carter's Ind. R. 42.