PRY *v.* PRY

[No. 28,319. Filed December 12, 1947.]

460

*Willard B. Van Horne, Sr.,* and *Willard B. Van Horne, Jr.,* both of East Chicago, for appellant.

*Martin A. Karmilowicz,* of East Chicago, for appellee.

GILKISON, J.—Appellee filed her action for divorce against appellant. Later she filed her verified application for support money and attorney fees. Appellant filed an answer in abatement to the divorce complaint, and an affirmative answer to the petition for support and attorney fees; he then filed a motion for change of venue from the county. The court, before ruling on the motion, ordered that the hearing for temporary support and attorney fees proceed, to which appellant objected "on the ground that plaintiff has not answered or replied to defendant's answer and objections to plaintiff's petition for temporary support and allowance." The court overruled this objection, and after hearing the evidence awarded the custody of the six months old child to the appellee and awarded $40 a month for support and $125 for attorney fees.

From this interlocutory order the appeal is taken. Appellant relies upon his assigned errors from 1 to 8 inclusive. By these assigned errors appellant contends: (a) That the issue attempted to be raised by his plea in abatement should have been tried before hearing the application for temporary support and attorney fees. (b) That it was error to hear the petition for temporary support and attorney fees after appellant's motion for change of venue from the county was filed. (c) That the allowance is excessive and a gross abuse of discretion. (d) That the court erred in refusing to hear evidence on the validity and existence of the marriage sued upon. We shall consider these alleged errors in the order given.

By his plea in abatement appellant charged in substance that prior to the filing of this action, he had filed an action against appellee, in which appellee filed a cross-complaint for divorce, and that in that action she was allowed $125 attorney fees which

appellant paid. That thereafter she dismissed her cross-complaint. There are such other averments that it is reasonable to presume the complaint also was dismissed, probably prior to the dismissal of the cross-complaint. The prayer to the plea in abatement is: "That the proceedings herein be stayed or abated until said cause (costs) occasioned by the filing of said cross-complaint . . . are paid by the plaintiff herein." There is no averment in the plea in abatement showing whom the costs were adjudged against in the action dismissed, but since there is always a presumption that a party will plead all proper facts favorable to his cause, we must presume the judgment for costs was against the pleader. *Merrill* v. *Pepperdine* (1894), 9 Ind. App. 416, 420, 36 N. E. 921; *The State ex rel MacKenzie* v. *Casteel, Auditor* (1887), 110 Ind. 174, 187, 11 N. E. 219; *Pond, Administrator* v. *Sweetser* (1882), 85 Ind. 144, 149, 150; *Pein* v. *Miznerr* (1908), 170 Ind. 659, 665, 84 N. E. 981. Omitted facts are to be considered as adverse to the pleader under the general presumption that a party will set forth all the facts favorable to his case. *Penn-American, etc., Co.* v. *Harshaw, etc., Co.* (1910), 46 Ind. App. 645, 647, 90 N. E. 1047; *Cushman* v. *Cloverland Coal, etc., Co.* (1908), 170 Ind. 402, 408, 84 N. E. 759; *Fink* v. *Cleveland, etc., R. Co.* (1914), 181 Ind. 539, 543, 105 N. E. 116.

The answer in abatement was not at issue, and if it had been, the court could not have tried it after the motion for change of venue from the county was filed. We find no error in hearing the petition for temporary support and attorney fees, before hearing and determining the answer in abatement.

The appellant's answer to the application for temporary support and attorney fees avers facts that may or

may not be admissible in the trial of his plea in abatement, and in the trial of the case on its merits, but were not admissible in the trial of the application for allowance *pendente lite.* In such a hearing neither the merits of the petition for divorce nor that of the answer in abatement are before the court and cannot be heard. *Argiroff* v. *Argiroff* (1939), 215 Ind. 297, 300, 19 N. E. (2d) 560; *Gruhl* v. *Gruhl* (1890), 123 Ind. 86, 88, 23 N. E. 1101.

At the hearing of appellee's petition, her attorney made the following admission: "To expedite the matter, we will admit that the defendant has a judgment of annullment of the marriage in the East Chicago City Court and that the judgment was entered by the judge of the East Chicago City Court." Appellant contends that this admission precluded the trial court from taking further action on the petition. Appellee contends that any judgment rendered by the East Chicago City Court in an action to annul a voidable marriage is void for want of jurisdiction of the subject matter.

The act creating the East Chicago City Court provides for its jurisdiction thus: Such court,

"shall have jurisdiction of all civil cases for the enforcement of demands not exceeding two thousand dollars ($2,000). Such court shall have jurisdiction in any action where the parties or the subject-matter are in the township in which such city is located and service may be had in the same manner as now provided by law governing the practice of justice of the peace courts for obtaining service: Provided, however, That such city court shall not have jurisdiction in action for slander, libel, matters relating to decedents' estates, appointment of guardians and all matter connected therewith, divorce and actions for injunction, or mandate: Provided, further, That such city court may assume jurisdiction of cases coming to it on change of venue from a justice of peace

in such township." § 4-2701, Burns' 1946 Replacement.

Our statute.providing for the annullment of voidable marriages is as follows:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, or when such marriage is procured through fraud of one of the parties, the same may be declared void, on application of the incapable party in the case of want of age or understanding and of the innocent party in the case of fraud, by any court having jurisdiction to decree divorces; but the children of such marriage begotten before the same is annulled, shall be legitimate; and, in such cases, the same proceedings shall be had as provided in applications for divorce." § 44-106, Burns' 1940 Replacement.

In determining the jurisdiction of the East Chicago City Court to entertain, hear and determine an action to annul a voidable marriage the two statutes above noted must be considered together and if possible, both must be given full force and effect. *Medias* v. *City of Indianapolis* (1939), 216 Ind. 155, 162, 23 N. E. (2d) 590; *Board, etc.,* v. *Garty* (1903), 161 Ind. 464, 469, 68 N. E. 1012; *State ex rel Barnett* v. *City of Noblesville* (1901), 157 Ind. 31, 34, 60 N. E. 704; *Carver* v. *Smith* (1883), 90 Ind. 222, 226.

Section 44-106, *supra,* was first enacted on March 10, 1873, and is § 25 of ch. 43, Acts 1873, pp. 107, 112, providing as follows:

"When either of the parties to a marriage shall be incapable from want of age or understanding, of contracting such marriage, the same may be declared void, on application of the incapable party, by any court having jurisdiction to decree divorces, but the children of such marriage, begotten before the same is annulled, shall be legitimate, and in

such cases the same proceedings shall be had as is provided in applications for divorce."

This act was amended by Acts 1937, ch. 23, § 1, p. 136 in its present form. In both the original and the amended act jurisdiction of an action to annul a voidable marriage is specifically granted to "any court having jurisdiction to decree divorces."

The original act establishing the East Chicago City Court was approved March 10, 1921 (Acts 1921, ch. 215, § 1, p. 587). It was amended in its present form on March 4, 1943 (Acts 1943, ch. 121, § 1, p. 373). In both the original, and the amended act jurisdiction of actions for divorce is expressly denied to this court. We find no conflict between § 4-2701, Burns' 1946 Replacement, *supra*, and § 44-106, Burns' 1940 Replacement, *supra*. It thus appears conclusively that the East Chicago City Court was and is without jurisdiction to entertain an action to annul a voidable marriage, and therefore, all its action with reference to annulling the marriage of appellant and appellee is void. It was the duty of the trial court to so treat it.

Appellant in support of his position, that the East Chicago City Court has jurisdiction of an action to annul a voidable marriage cites the following cases: *Christlieb* v. *Christlieb* (1919), 71 Ind. App. 682, 125 N. E. 486, where the court by way of *dicta* said, "Courts of equity under their general powers to annul fraudulent contracts also have jurisdiction to annul a marriage on account of fraud." In that case the action was filed and tried in a circuit court and, of course, no jurisdictional question was before the court. *Henneger* v. *Lomas* (1896), 145 Ind. 287, 299, 44 N. E. 462, in which appellant, after her divorce from appellee, brought suit against him to recover

damages for her own seduction. In the course of a 17 page opinion, Judge Monks likewise by *dicta*, on page 299, said: "Courts having the jurisdiction of courts of equity, under the general power, to annul fraudulent contracts, have also jurisdiction to annul a marriage on account of ¯fraud." In that case the action was brought and reduced to final judgment in the Allen Superior Court and no jurisdictional question was presented by the record. *Tefft* v. *Tefft* (1871), 35 Ind. 44, which was an action for divorce tried in the Elkhart Circuit Court, decided three years before our statute authorizing the annulment of voidable marriages and providing jurisdiction of the courts therefor, was enacted. No jurisdictional question was presented to the court in that case, but this court incidentally, and by way of argument said that our circuit courts have jurisdiction to annul a marriage in a proper case, independent of any provision in the divorce law. We think this statement was correct when made, and would be correct now as applied to circuit courts. *Wiley* v. *Wiley* (1919), 75 Ind. App. 456, 123 N. E. 252, at page 465, the court said:

> "Appellants are not seeking to dissolve a voidable marriage. They rest their claim to the estate on the unequivocal theory that the pretended marriage is void. . . . In other words under the general rule, if the ostensible marriage is void, then the appellants would not be compelled to bring an action for the specific purpose of having it so adjudged; for a void marriage is good for no legal purpose, and its invalidity may be shown in any court, between any parties, either in the lifetime of the ostensible husband and wife or after the death of either or both of them."

We think this states the law correctly with respect to void marriages, but as clearly indicated in that

decision it simply could not apply to marriages that are merely voidable.

*Arado* v. *Arado* (1917), 205 Ill. App. 261, is a case of an incestuous marriage by first cousins, in violation of a criminal statute. The bill for divorce was dismissed and the marriage was annulled as void, on defendant's cross-bill. The trial court, over objection, refused to allow alimony and solicitor's fees. In deciding this proposition the Appellate Court of Illinois, on page 263, said:

> "The allowance of alimony and solicitor's fees contemplates, as a basis therefor, a valid or at least a voidable marriage contract; and it appearing from the pleadings that the alleged marriage contract in question was void in its inception, the relation of husband and wife never existed between the parties hereto, and hence the court properly refused to make such allowance to the complainant."

Surely this case lends no support to appellant's contention.

Section 44-105, Burns' 1940 Replacement (Acts 1873, ch. 43, § 1, p. 107) provides:

> "All marriages prohibited by law on account of consanguinity, affinity, difference of color, or where either party thereto has a former wife or husband living, if solemnized within this state, shall be absolutely void without any legal proceedings."

This section is a part of the same Act as § 44-106, Burns' 1940 Replacement, *supra*. This act also contains our divorce statutes, but these have since been amended and changed in some particulars. The title of the act is as follows:

> "AN ACT regulating the granting of divorces, nullification of marriages, and decrees and orders of courts incident thereto, and repealing all laws

conflicting with this act, and declaring an emergency."

From a consideration of this act and the amendments that have been made thereto it is quite apparent that every section of it must be considered along with every other section and with the title, and each must be given full force and effect agreeable with the legislative intent. The relations, duties, obligations, and consequences flowing from the marriage status are so vital, alike to the individuals concerned, the issue therefrom, society and the state, that they are essentially subject to legislative control. *Wiley* v. *Wiley, supra.* By § 44-106, *supra*, the legislature has wisely granted jurisdiction to annul marriages only to a "court having jurisdiction to decree divorces." Only a court with such jurisdiction can make and enforce necessary orders for the custody, care, support, and education of the children begotten of such marriages. Evidently this is at least an impressive reason why jurisdiction in such cases was given only to such courts.

In the trial court appellant did not object to the hearing on the application for temporary support and attorney fees on the ground that he had filed a motion for change of venue from the county. However, the matter of granting temporary support and attorney fees to a wife in a divorce action is an interlocutory proceeding, ancillary to the main action designed to assure to the wife and children a proper support only during the pendency of the divorce action, and until the final judgment is rendered, and to insure to the wife an efficient preparation of her case and a fair and impartial trial. It is wholly ancillary to the principal action and in itself is not a civil action such that either party would be entitled to a change of venue

from the county. To take action on such an application is a prerogative of a court of equity, exercised agreeable with the statute, in aid of its jurisdiction, to enable it, as far as practicable to administer justice between the parties. From the nature of the power and the purposes for which it may be invoked, its usefulness may depend upon the promptness of its exercise. It is doubtful if the formation of issues is contemplated in such proceeding. We think it necessarily follows that it was proper for the court to dispose of the application before perfecting the change of venue from the county. The proceeding is analagous to the appointment of a receiver in connection with a main action to which the receivership is merely ancillary. *Bitting* v. *Ten Eyck* (1882), 85 Ind. 357, 360, 361; *Stair* v. *Meissel* (1934), 207 Ind. 280, 293, 192 N. E. 453; *Kist* v. *Coughlin, Trustee* (1936), 210 Ind. 622, 632, 633, 1 N. E. (2d) 602, 4 N. E. (2d) 533; *Vogel* v. *Chappell, Trustee* (1937), 211 Ind. 310, 312, 313, 6 N. E. (2d) 953; *Wright* v. *Union Central Life Ins. Co.* (1937), 212 Ind. 563, 566, 10 N. E. (2d) 726. In such a proceeding it has been frequently held that the court may, and usually should, appoint a receiver after a motion for change of venue is filed and before the change is perfected.

The evidence showed that appellant and appellee were married August 17, 1946; that they have one child which is living with appellee; that appellee is working, earning approximately $120 a month, and that she pays $100 a month for board and room for herself and child and care of the child while she works. In addition to this she has to pay for her transportation to and from work, clothing for herself and child and medical attention. There is no showing that she has any property other than her wages. The evidence

further shows that appellant earns approximately $200 a month, and that he paid appellee support money until some three or four weeks before the date of the hearing. There is no showing that appellant has property other than his earnings.

Our code § 3-1216, Burns' 1946 Replacement, authorizes the court to make "such orders relative to the expenses of such suit and attorney fees as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof." The amount of the allowance is necessarily left to the sound discretion of the lower court. Its action will not be disturbed on appeal unless it is made to appear that there has been an abuse of discretion. *Harrell* v. *Harrell* (1872), 39 Ind. 185, 187, 188; *Argiroff* v. *Argiroff, supra,* p. 300; *Gruhl* v. *Gruhl, supra,* p. 87, 88; *Brown* v. *Brown* (1945), 223 Ind. 463, 465, 466, 61 N. E. (2d) 645, 646. We find no abuse of discretion in this case.

The evidence of both the plaintiff and defendant disclosed that they were duly married. Whether either is entitled to have the marriage annulled is a matter that may be adjudicated in the main action. It is not before the trial court in this merely ancillary proceeding, and hence is not before us in this appeal.

Finding no error in the record the judgment is affirmed.

NOTE.—Reported in 75 N. E. (2d) 909.