## DEMOSS *v.* DEMOSS, ETC.

[No. 19,823. Filed January 9, 1964. Dissenting opinion filed January 29, 1964.]

*Robert J. Fair,* of Princeton, for appellant.

*Warren Barnett,* of Princeton, *Kimmell, Kimmell & Funk* and *Curtis V. Kimmell,* of Vincennes, for appellee.

PFAFF, J.—This action was brought by appellee to annul his marriage to appellant pursuant to §44-106, Burns' 1952 Replacement, which provides:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, . . . the same may be declared void, on application of the incapable party in the case of want of age or understanding . . . by any court having jurisdiction to decree divorces; . . . ."

Appellant's demurrer to the complaint, based upon the ground that it did not state facts sufficient to constitute a cause of action, was overruled. Appellant refused to plead further, and judgment was rendered, after the hearing of evidence, that the marriage be annulled.

The overruling of the demurrer is assigned as error.

The complaint alleges that the parties were both residents of Gibson County, Indiana, and were married in Vanderburgh County on April 7, 1961; that at the time of the marriage appellant was pregnant; that appellee was and still is seventeen years of age and did not have the consent of his parents to enter into the marriage contract; that on the date of the marriage the parties appeared before the judge of the Vanderburgh Superior Court and applied for an order directing the clerk of the Vanderburgh Circuit Court to issue a marriage license to them; that the court knew of the above facts and was so informed by the petition, and issued an order directing the clerk to issue the marriage license; that the license was illegal. Appellee prayed that the marriage be annulled.

Appellant based her argument that the marriage was not voidable upon Chapter 130 of the Acts of 1957, §2,

p. 229, approved March 11, 1957, §44-202, Burns' 1963 Cum. Supp., which amended an 1852 statute (1 R. S. 1852, ch. 67), by adding a new section as follows:

"In the event the female applicant for a license to marry is under eighteen (18) years of age, or the male applicant is under twenty-one (21) years of age, the license cannot be issued unless the application for the license is accompanied by a verified written consent, consenting to the issuance of the license to any such under-age applicant, signed and verified in the presence of the issuing officer by one of the following:

"(1) Both parents, either natural or adoptive, of any such applicant; or

"(2) The legally appointed guardian of any such applicant; or

" . . .

"(b) Parties intending to marry who require parental or guardian's consent in order to obtain a license to marry, may petition, either orally or by a written petition, the judge of the circuit court, or the judge of a superior court, of the county in which either or both of the parties reside, or of a county immediately adjoining such county, for a judicial decree authorizing the dispensation of the required consent. In the consideration of any petition so filed, the judge of such court may conduct any investigation or hold any hearing that he may deem necessary to a proper determination of the petition. After due consideration of the pertinent facts relevant to the matter presented by the petition, the judge of such court may, for good and sufficient reason shown and in the best interests and welfare of all persons concerned, issue a written order, directed to the clerk of the circuit court, authorizing and directing such clerk to issue a marriage license to the petitioners without requiring the submission of any required written consent."

Prior to 1957, the 1852 statute, both as originally adopted and as amended in 1951, contained a similar provision requiring the consent of parents or guard-

ians in the event the female was within the age of eighteen or the male within the age of twenty-one.

Appellant's argument is that the above quoted section of the statute makes no reference to any minimum age limit under which the court may not go in exercising its jurisdiction, and therefore there is no minimum age limit; that inasmuch as the court authorized and directed to the clerk to issue the marriage license, the marriage was not voidable. It might be similarly observed that this particular section of the statute does not fix a minimum age limit for marriage where the parents or guardians consent. Appellant further argues that this is the sole statutory provision applicable here and that §44-101, Burns' 1963 Cum. Supp., is not applicable.

A single statutory provision cannot be construed standing alone and must be construed in the light of the entire act to which it applies. *Tinder, Pros.* █ *Atty. et al.* v. *Music Op. Inc.* (1957), 237 Ind. 33, 52, 142 N. E. 2d 610; *McKee* v. *Hasler* (1951), 229 Ind. 437, 449, 98 N. E. 2d 657; *Pry* v. *Pry* (1947), 225 Ind. 458, 468, 75 N. E. 2d 909.

In 26 I. L. E., *Statutes*, §130, p. 341, it is stated:

"All statutes relating to the same subject matter should be so construed with reference to each other that effect may be given to all the provisions of each, if this can be done by any fair and reasonable construction, so as to produce a harmonious system, if possible; the later of two statutes covering the same subject matter is controlling as to any conflicting provisions."

Further, in 26 I. L. E., *Statues*, §131, p. 344, the following language may be found:

"The rules of construction and interpretation of acts in pari materia apply with singular force to

acts passed at the same session of the Legislature. . . ."

See also Crawford, *Statutory Construction*, §230, pp. 429-430; Sutherland, *Statutory Construction*, §5201, pp. 529-548.

Chapter 255 of the Acts of 1957, p. 585, approved March 13, 1957, §44-101, Burns' 1963 Cum. Supp., amended another section of the 1852 statute (1 R. S. 1852, ch. 67, §1, p. 361), as it had been previously amended in 1877, to read as follows:

"Marriage is declared to be a civil contract into which males of the age of eighteen (18), and females of the age of sixteen (16), not nearer of kin than second cousins, and not having a husband or wife living, are capable of entering; Provided, That if satisfactory proof is furnished to the judge of any circuit, superior or juvenile court that a female is pregnant; that the female is under the full age of sixteen (16) years or the putative father is under the full age of eighteen (18) years, or both; that said parties desire to be married to each other and that the parents or other person in loco parentis of the person or persons so under age consent thereto, then the judge of any such court in the county where either of such parties resides may waive the minimum age requirement and by written instrument authorize the clerk of the court to issue the marriage license to the parties if they are otherwise qualified by law. Authorization shall be a part of the confidential files of the clerk of the court, subject to inspection only by written permission of the judge."

The principal change made by the 1957 amendment was the addition of the proviso and the second sentence, neither of which is applicable to the facts in this case. No change was made in the provisions as to age except changes in punctuation.

Minimum age limits for marriage have been prescribed by statute since the early days of this state. See R. S. 1838, p. 410, quoted in *Adkins* v. *Holmes* (1850), 2 Ind. 197, 200.

Section 44-202, Burns' *supra*, must be construed in connection with §44-101, Burns' *supra*, and particularly the words of the latter statute that, "Marriage is declared to be a civil contract into which males of the age of eighteen (18), and females of the age of sixteen (16), . . . are capable of entering;" as well as the provisions of §44-106, Burns' *supra*, to the effect that when either of the parties to a marriage is incapable from want of age of contracting a marriage, the same may be declared void by a proper court. If it were otherwise the proviso added to §44-101 in 1957 would be meaningless.

A marriage between persons who are incapable, from want of age of contracting the same, is voidable and not void. Thus, such a marriage is subject to ratification when the parties become of proper age. *Henneger* v. *Lomas* (1896), 145 Ind. 287, 302, 44 N. E. 462.

The complaint here indicates that appellee was a male seventeen years of age at the time of marriage, and also at the time of the filing of this action, and could not have ratified the marriage. The marriage was therefore voidable and subject of being declared void upon his application.

The court did not err in overruling the demurrer.

Judgment affirmed.

Carson, C. J., Cooper, Kelley and Ryan, JJ., concur. Hunter, P. J., dissents with opinion to follow. Faulconer, J., not participating.

DISSENTING OPINION

HUNTER, P. J.—On April 7, 1961 the parties were married in Vanderburgh County. Both the appellant and appellee were at said time residents of Gibson County. The appellant, seventeen years of age, was pregnant; the appellee was seventeen years of age and *did not have the consent of his parents to said marriage*. The appellant and appellee appeared before the judge of the Vanderburgh Superior Court and informed said judge of the above facts and orally petitioned the court for an order directing the clerk of the court to issue a marriage license to them. The judge of said court upon a hearing granted said petition and issued an order directing the clerk to issue a marriage license to them, the marriage license was accordingly issued by the clerk and the appellant and appellee then were married.

The complaint for annulment filed by the appellee alleged a lack of jurisdiction in the judge of the Vanderburgh Superior Court to order the issuance of a marriage license to the parties. The complaint seeks an annulment on the ground that the marriage is voidable under the provisions of the Acts of 1873, ch. 43, §25, p. 107; 1937, ch. 23, §1, p. 136, §44-106, Burns' 1952 Replacement which reads as follows:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, or when such marriage is procured through fraud of one (1) of the parties, the same may be declared void, on application of the incapable party in the case of want of age or understanding and of the innocent party in the case of fraud, by any court having jurisdiction to decree divorces; but the children of such marriage begotten before the same is annulled, shall be legitimate; and, in such cases, the same proceedings shall be had as provided in applications for divorce."

for the reason that the order of the Vanderburgh Superior Court unlawfully directed the issuance of a license. Appellee's prayer asked that the marriage be annulled.

Appellee argues and indeed the majority opinion seems to hold without so stating that the only statutes applicable to the situation are §44-106, Burns' 1952 Replacement, *supra,* and 1 R. S. 1852, ch. 67, §1, p. 361; Acts 1877, ch. 53, §1, p. 94; 1957, ch. 255, §1, p. 585, §44-101, Burns' 1963 Cumulative Pocket Supplement which reads as follows:

> "Marriage is declared to be a civil contract into which males of the age of eighteen (18), and females of the age of sixteen (16), not nearer of kin than second cousins, and not having a husband or wife living, are capable of entering; Provided, That if satisfactory proof is furnished to the judge of any circuit, superior or junvenile court that a female is pregnant; that the female is under the full age of sixteen (16) years or the putative father is under the full age of eighteen (18) years, or both; that said parties desire to be married to each other and that the parents or other person in loco parentis of the person or persons so under age consent thereto, then the judge of any such court in the county where either of such parties resides may waive the minimum age requirement and by written instrument authorize the clerk of the court to issue the marriage license to the parties if they are otherwise qualified by law. Authorization shall be a part of the confidential files of the clerk of the court, subject to inspection only by written permission of the judge."

The majority opinion relies for its support upon the doctrine of para-materia and for the purpose of convenience the citations under said doctrine are also set forth in this opinion as follows: a single statutory provision cannot be construed standing alone and must be construed in the light of the entire act to which it ap-

plies. *Tinder, Pros. Atty. et al.* v. *Music Op. Inc.* (1957), 237 Ind. 33, 52, 142 N. E. 2d 610; *McKee* v. *Hasler* (1951), 229 Ind. 437, 449, 98 N. E. 2d 657; *Pry* v. *Pry* (1947), 225 Ind. 458, 468, 75 N. E. 2d 909.

In 26 I. L. E., *Statutes*, §130, p. 341, it is stated:

"All statutes relating to the same subject matter should be *so construed with reference to each other that effect may be given to all the provisions of each, if this can be done by any fair and reasonable construction, so as to produce a harmonious system, if possible; the later* of two statutes covering the same subject matter *is controlling as to any conflicting provisions.*" (our emphasis)

However, after announcing the rules as above cited, the majority opinion then seems to abandon the application of said principles in the conclusions reached therein. Under the provisions of §44-101, Burns' 1963 Cumulative Pocket Supplement, *supra,* where either the pregnant female is under the age of sixteen years or the putative father is under eighteen years or both, and the requisite consents have been executed the judge may waive the minimum age requirements and authorize the clerk to issue the license and such written authorization shall be a part of the confidential files of the clerk of the court, subject only to inspection by written permission of the judge. The statute *is permissive and suggests only a ministerial function* be performed by the judge of the circuit, superior or juvenile court of the county of the residence of both or either of the parties. It should be readily apparent from a close examination of §44-101, Burns' 1963 Cumulative Pocket Supplement, *supra,* that the function performed by the judge of the court under its provisions amounts simply to an approval of the issuance of the license and in no way authorizes a judicial determination but only

permits by approval the waiving of the minimum age requirements. There is wisdom in the provisions of the statute and the legislative wisdom is indicated in the last sentence of the proviso added by amendment in 1957. It provides a simple, direct and remedial medium for rectifying what would otherwise be an embarrassing and perhaps tragic situation. The statute contemplates *only a ministerial function as distinguished from a judicial function.*

The appellee in his annulment proceedings relies solely upon §44-101, Burns' 1963 Cumulative Pocket Supplement, *supra,* as being the only statute authorizing the issuance of a marriage license to the parties, and if such is the case, then the appellee would be correct in his contentions for two reasons. First, the above statute confers jurisdiction only upon courts in the county in which one or both of the parties reside and in the instant case neither resided in Vanderburgh County. Secondly, any judge, including the judge of a court in the county of the residence of the parties, or either of them, is powerless to act under this statute and to authorize the clerk to issue a marriage license to such under age applicants unless and until *each one of all of the* requisite consents are executed. In this regard that statute is clear and unequivocal. That statute, therefore, was of no avail to these parties for it was the consent of the appellee's parents which they lacked. Thereupon they *jointly sought an alternative remedy.*

The appellant urges our consideration of 1 R. S. 1852, ch. 67, §5a, as added by Acts 1957, ch. 130, §2, p. 229, §44-202, Burns' 1963 Cumulative Pocket Supplement, the relevant parts of which provide:

"In the event the female applicant for a license to marry is under eighteen (18) years of age, or the male applicant is under twenty-one (21) years of

age, the license cannot be issued unless the application for the license is accompanied by a verified written consent, consenting to the issuance of the license to any such under-age applicant, signed and verified in the presence of the issuing officer by one of the following:

(1) Both parents, either natural or adoptive, of any such applicant; or ...

(b) Parties intending to marry who require parental or guardian's consent in order to obtain a license to marry, may petition, either orally or by a written petition, the judge of the circuit court, or the judge of a superior court, of the county in which *either or both of the parties reside,* or of *a county immediately adjoining such county,* for a *judicial decree authorizing* the *dispensation of the required consent.* In the consideration of any petition so filed, *the judge* of such court *may conduct any investigation* or *hold any hearing* that *he may deem necessary to a proper determination of the petition.* After due consideration of the pertinent facts relevant to the matter presented by the petition, the judge of such court may, for good and sufficient reason shown and in the best interests and welfare of all persons concerned, issue a written order, directed to the clerk of the circuit court, authorizing and directing such clerk to issue a marriage license to the petitioners without requiring the submission of any required written consent." (our emphasis)

It was the last above quoted statute that was utilized by the appellee jointly with appellant in the instant case in obtaining a marriage license by going before the judge of the Vanderburgh Superior Court and petitioning for and receiving an order from said judge directing the issuance of a marriage license to the parties. After having petitioned and invoked the jurisdiction of said court, he now seeks to attack the jurisdiction of that court by his annulment proceedings and indeed the majority opinion has sustained his position for in effect without saying so expressly, it implies

that §44-202, Burns' 1963 Cumulative Pocket Supplement, *supra,* is of no force or effect under the circumstances of this case and consequently would indicate that said statute would not be of any force and effect in any similar or like circumstances for in the third from the last paragraph it is stated therein:

> "Section 44-202, Burns' *supra,* must be construed in connection with §44-101, Burns' *supra,* and particularly the words of the latter statute that, 'Marriage is declared to be a civil contract into which males of the age of eighteen (18), and females of the age of sixteen (16), . . . are capable of entering;' as well as the provisions of §44-106, Burns' *supra,* to the effect that when either of the parties to a marriage is incapable from want of age of contracting a marriage, the same may be declared void by a proper court. If it were otherwise the proviso added to §44-101 in 1957 would be meaningless."

In Crawford, *Statutory Construction,* §229, p. 428, thereof we find the following general rule:

> "When it is necessary to resort to the process of construction, the court may properly refer to certain other statutes in its effort to determine the meaning of the language used by the legislature, especially where such statutes are pre-existing or contemporaneous."

It would seem that the proper rule to be applied would be to consider the whole body of provisions of contemporaneous legislation in interpreting any statute for the reason that the legislature is presumed to have a consistent design and policy and to intend nothing inconsistent or incongruous with reference to the statutes here under discussion. It should be pointed out that §§44-101 and 44-202, *supra,* were passed contemporaneously in the 1957 session of the Indiana General Assembly, the former having been enacted two days

after the latter mentioned statute. It is true as a matter of statutory construction, in the event of repugnancy or conflict within the provisions of two statutes dealing with the same subject matter, that the latter statute in point of time of enactment would be all controlling. The same would also be true if the latter statute admitted of no construction except one of limitation. With reference to the statutes under consideration in this case, it does not seem to be that there is any ambiguity, incongruity or conflict and that both statutes can be given and accorded full recognition and applicability under the clear and plain language of each. As a court, we should apply the doctrine of *para materia* logically and recognize the rule that statutes relating to the same subject matter were enacted in accord with the same legislative policy and that together they constitute a harmonious and uniform system of law and they should be construed to be in harmony with each other in order that each may be afforded complete consideration and be fully effective. They should be construed together as if they constituted one act. If we may indulge in the legal principle that the legislature in its various enactments is presumed to have adopted such statutes with full knowledge of the case law interpretations adopted by the courts under prior statutes, is it not more reasonable to indulge the presumption that the legislature in passing two acts at the same session which, when construed together, apply to the same subject matter, that the latter act was passed with full knowledge of the enactment of the former, and that if in the latter act the legislature intended said act to be exclusively limiting, it could have, by very simple language, so stated in the enactment. Therefore, it would appear logical that since statutes contemporaneously enacted dealing with the same subject are to be regarded as part

of one system, the latter statute should be construed to be supplemental or complementary to the preceding statute, and this should be infinitely clear where no specific conflict, repugnancy or ambiguity exists. The above reasoning is supported by the following citations:

. . . "Unless every statute relating to the same subject is taken to constitute collectively one system, or construed as constituting one general statute or law, a uniform system would be impossible, and hopeless inconsistencies would exist, and it would be impossible for one to know what the law was under a given set of circumstances." Crawford, *Statutory Construction,* §232, p. 435.

"We must presume that the legislature passes each and every statute with a knowledge of existing law. If such a presumption could not be indulged in, it would be difficult, if not utterly impossible, to justify the resort to previous legislation. Moreover, it would be impossible without such a presumption to maintain a harmonious system of law, which is so essential to a workable and equitable system of jurisprudence. Perhaps in many instances, the presumption is without foundation. Yet in many others, it actually exists." Crawford, *Statutory Construction,* §232, p. 436.

It would seem that common sense would dictate that §44-202, *supra,* be construed in para materia with §44-101, *supra,* as *an alternative remedy* for effecting a marriage between under-age parties where one or more of the requisite consents are not executed, and that this court should not, as in the majority opinion stated, inferentially hold §44-101, *supra,* to be exclusively operative under the facts of this case and thereby completely ignore the very clear and plain language of §44-202, *supra,* and that both statutes be construed in conjunction with §44-106, *supra,* because neither of the first two statutes (§§44-101 and 44-202,

*supra*) contains a minimum age below which the court may not act under the respective provisions of each. It is true that §44-101, *supra,* mentions pregnancy and §44-202, *supra,* does not, however, the latter statute does authorize the judge of a properly constituted circuit court or superior court upon petition of underage applicants to enter a decree in the exercise of judicial discretion "for good and sufficient reasons shown and *in the best interests and welfare of all persons concerned*". Can it be successfully argued that an incident of pregnancy would not fall within the above authorization? Indeed the whole tenor of the language of §44-202, *supra,* calls for a strictly *judicial function* to be performed, as here, by an impartial judge of a sister court in an adjoining county as distinguished from the purely ministerial function contemplated by §44-101, *supra,* for it contemplates "a judicial decree authorizing the dispensation of the required consent" and it provides further "the judge may conduct any investigation or hold any hearing he may deem necessary to a proper determination of the petition" and "after due consideration of the pertinent facts relevant to the matter . . . may, for good and sufficient reasons shown and in the best interests and welfare of all persons concerned" issue an order for the marriage license. The provisions of the statute would conclusively permit the judge to call witnesses, conduct a full hearing and responsibly act with judicial discretion and in the absence of a showing to the contrary, it must be legally presumed that the judge of the Vanderburgh Superior Court did so act in ordering the issuance of the marriage license to the parties upon their joint petition.

If we do not construe §44-202, *supra,* in a manner calculated to give full effect to its clearly and plainly stated alternative judicial procedure, what is the re-

sulting situation? If a pregnant female applicant either be under the age of sixteen years or over sixteen years, and yet under the age of consent, and the putative father be under the age of eighteen years and *one*, not both but one, of the parents of such under-age applicants refuses to give consent, there can be no legal marriage under any such circumstances in Indiana. If the majority opinion is to stand, it will permit any one such parent to refuse consent, without cause, or by reason of family pride or family prestige in the community, or even out of malice and by such refusal totally thwart the desires of the under-age applicants as well as the "best interests and welfare of all parties concerned" and there could be no appeal or remedy in any court, reason, social welfare and justice notwithstanding. The very provisions of §44-202, *supra,* providing as it does, for a petition to an impartial judge of a court in an adjoining county, it seems should be interpreted as providing a remedy for any such unreasonable refusal to consent and this court should accord to it such construction.

The majority opinion in omitting such a construction and by implication ruling out its applicability to the facts and circumstances of this case, has in my opinion, in a long view of its aspects, increased the possibility of incidents of illegitimacy, public wardships, juvenile court actions, run-away marriages and perjured marriage applications; and in the short view, will encourage petitions for annulment of like marriages now existent which have not as yet been ratified by the parties upon attainment of ages of consent, and such encouragement will be readily apparent to any one dissatisfied parent of any such underage party.

It would seem that the above reasoning becomes imperative for the reason that where a marriage has been

consummated, the law raises a very strong presumption in favor of such marriage and such presumption is one of the strongest known to our law. It is stated in 55 C. J. S., *Marriage,* §48:

> "Dissolution of the marriage relations is a proceeding not favored by the law. On the contrary, the policy of the law is to uphold the marital status and the vigilance with which the law guards the marital status when an attack is made against its continuance is intensified when made against validity from the very beginning."

Thus it appears that every intendment of the law is in favor of such a marriage and therefore, every intendment should be raised in favor of its legality and against its avoidance by an annulment proceeding. This rule is well stated in *Mason* v. *Mason* (1884), 101 Ind. 25, where the court at page 28, said:

> "When the marriage relation is once entered into it is the policy of the law to uphold its validity by every reasonable intendment . . . Statutes seemingly mandatory will sometimes be construed to be directory only, when necessary to sustain the validity of a marriage not inexorably void."

Therefore, for all of the foregoing reasons and in view of the possibility of the grave social consequences inherent in the majority opinion, it is respectfully submitted that the judgment of the trial court should be reversed and this cause remanded with instructions to sustain the appellant's demurrer to the appellee's complaint.

Mote, J., concurs in the dissent of Hunter, P. J.

NOTE.—Reported in 195 N. E. 2d 496.