T. T., Appellant (Petitioner below)

v.

STATE of Indiana, Appellee (Respondent below).

No. 2–1281A417.

Court of Appeals of Indiana, Second District.

Aug. 30, 1982.

Susan K. Carpenter, Public Defender, Frances Watson, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

On March 23, 1981 T. T. was adjudicated a delinquent child based upon the alleged delinquent act of criminal contempt for disobeying a court order to attend school. She was then awarded to the guardianship of the Department of Correction until age twenty unless released sooner and was ordered detained pending transfer. On June 8, 1981 she filed a petition for post conviction relief alleging her commitment was contrary to law and that she did not knowingly and voluntarily waive her right to counsel.

T. T. appeals the denial of her petition and raises four issues:

1) whether a juvenile may be adjudicated delinquent for criminal contempt;

2) whether the juvenile court abused its discretion in committing T. T. to the Department of Correction;

3) whether a commitment imposed as a result of an adjudication of delinquency for criminal contempt may exceed three months; and

4) whether T. T. knowingly and voluntarily waived her right to counsel.

We reverse. As we find the first issue constitutes reversible error, we need not reach the other issues. *Cowan v. Murphy*, (1975) 165 Ind.App. 566, 333 N.E.2d 802.

The Indiana juvenile code enumerates five so-called status offenses [1] as delinquent acts in addition to committing an act that would be an offense if committed by an adult. I.C. 31–6–4–1(a) (Burns Code Ed., Repl.1980). It then defines a delinquent child as one who (1) commits an act that would be an offense if committed by an adult or (2) commits any of the status offense delinquent acts *and* also is in need of care, treatment or rehabilitation. I.C. 31–6–4–1(b). The distinction between the two classifications of delinquent children is important because the code further prohibits awarding wardship of juveniles to the Department of Correction as a disposition unless they have been adjudicated delinquent for committing an act that would be an offense if committed by an adult. I.C. 31–6–4–16(g)(3). Therefore, T. T.'s wardship is contrary to law unless criminal contempt is an act which would be an offense if committed by an adult. It is not.

T. T. was charged with criminal contempt. Criminal contempt is any act

"which manifests a disrespect for and defiance of a court. The willful and intentional disobedience of the orders of these Courts can constitute indirect criminal contempt."

*Matter of Lemond*, (1980) Ind., 413 N.E.2d 228, 231. Although in Indiana its use by

---

1. Under I.C. 31–6–4–1(a) (Burns Code Ed., Repl.1980) a status offender is one who

"(2) Leaves home without reasonable cause and without permission of his parent, guardian, or custodian who requests his return;

(3) Violates the compulsory school attendance law (IC 20–8.1–3[20–8.1–3—20–8.1–3–37]);

(4) Habitually disobeys the reasonable and lawful commands of his parent, guardian, or custodian;

(5) Commits a curfew violation; or

(6) Violates IC 7.1–5–7[7.1–5–7–1—7.1–5–7–14]."

trial courts is governed by statute, I.C. 34–4–7–1 *et seq.* (Burns Code Ed.), it nevertheless is not an offense.

In *Niemeyer et al. v. McCarty et al.*, (1943) 221 Ind. 688, 51 N.E.2d 365, the issue was whether a contempt of court could be used to impeach a witness when, by statute, only convictions of crimes could be used for that purpose. In affirming the trial court's actions on the issue, the Supreme Court stated:

"In this state all crimes are statutory, and all who are accused of a crime are entitled to a trial by jury, and there can be no conviction of crime except by a jury unless a jury was waived. Contempt of court is not a crime, although the same act may be a crime and may also be a contempt of court. *Id.*, 221 Ind. at 692, 51 N.E.2d at 367."

As defined by I.C. 35–41–1–2 (Burns Code Ed., Repl.1979), the category "offense" is broader than the category "crime." However, it has been broadened only to include infractions and violations of ordinances. Under *Niemeyer* contempt is not a crime. Neither is it an infraction or a violation of an ordinance. Therefore, it is not an offense. Consequently, we hold criminal contempt is not an act for which a juvenile can be adjudicated a delinquent child under I.C. 31–6–4–1(b)(1).

This is not to say that a trial court faced with a juvenile who willfully disobeys a lawful court order may be without a remedy.[2] For example, I.C. 31–6–7–15 (Burns Code Ed., Repl.1980) provides:

"The juvenile court may punish a person for contempt of court under I.C. 34–4–7[34–4–7–1—34–4–7–10], I.C. 34–4–8[34–

4–8–1, 34–4–8–2] or I.C. 34–4–9[34–4–9–1—34–4–9–3]."

However, that statutory procedure is unavailing in this case because it was not used.[3] Furthermore, by the terms of I.C. 34–4–7–6 (Burns Code Ed.) imprisonment as punishment for contempt of court cannot exceed three (3) months.

Judgment reversed and cause remanded for further proceedings consistent herewith.

SULLIVAN, J., concurs.

BUCHANAN, C. J., concurs in result, with separate opinion.

BUCHANAN, Chief Judge, concurring in result.

I concur in result.

I concur in the majority's conclusion that "criminal contempt is not an act for which a juvenile can be adjudicated a delinquent child under IC 31–6–4–1(b)(1)." A juvenile who is in contempt of court has not committed "an act that would be an offense if committed by an adult"; therefore, it was improper for the trial judge to confine T. T. to secure detention until she reached age twenty under the authority of Ind.Code 31–6–4–6.5(b).[1]

Having so agreed, I would go further and address more fully the separate issue of whether juvenile courts may, apart from a delinquency proceeding, hold a juvenile status offender in contempt pursuant to Ind. Code 31–6–7–15 ("The juvenile court may punish a person for contempt of court under IC 34–4–7, IC 34–4–8, or IC 34–4–9.") (hereinafter referred to as the Contempt Statute). Had certain procedural requirements been met,[2] and they were not, T. T. could

---

**2.** *Contra W.M. v. State*, (filed July 27, 1982) Ind.App., 437 N.E.2d 1028, 2–1281 A 416.

**3.** In addition, the trial court's exercise of its inherent power to punish for contempt is not in issue.

**1.** "A child alleged to be a delinquent child under IC 31–6–4–1(b)(1) [children who commit acts that would be offenses if committed by adults] may be held in a secure facility . . . ."

**2.** "In all cases of indirect contempts, the person charged therewith shall be entitled, be-

fore answering thereto, or being punished therefor, to have served upon him a rule of the court, against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt; and shall specify the time and place of such facts with such reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against him; and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished

properly have been cited for indirect criminal contempt[3] and imprisoned for up to three months.[4]

In 1979, the Indiana Legislature promulgated the present version of the Contempt Statute. During that same legislative session, IC 31–6–4–6.5 was enacted to prohibit the secure detention of status offenders alleged to be delinquent children. The two statutes, enacted during the same year and placed together in Title 31, Article 6 dealing with juvenile law, must be construed together so as to harmonize and give effect to each. *Connell v. Logansport*, (1979) Ind. App., 397 N.E.2d 1058; *Wayne Twp. v. Lutheran Hospital*, (1974) 160 Ind.App. 427, 312 N.E.2d 120, *trans. denied.* The legislature's attempt to deinstitutionalize status offenders in IC 31–6–4–6.5 cannot be construed standing alone, *Demoss v. Demoss*, (1964) 135 Ind.App. 548, 195 N.E.2d 496, but must be interpreted in light of the need for effective enforcement of juvenile court orders.

The Contempt Statute grants the juvenile court power to punish a person for contempt of court pursuant to the general contempt provisions in Title 34, Article 4, Chapters 7, 8, and 9. The list of acts constituting contempt set out in Chapter 7 is not exhaustive—it is "not for the Legislature to declare what the court shall or shall not consider to be a contempt," *Little v. State*, (1883) 90 Ind. 338, 341—but is a recognition of the court's inherent contempt power:

"The right to punish for contempt is inherent in every court. It is necessary to the preservation of order, to the enforcement of judgments, writs and orders, and therefore is essential to the due administration of justice.... It is therefore sometimes necessary for courts to exercise their power to punish for contempt, not for the sake of the judges nor to vindicate them, but in order to maintain the standing, the respect, the dignity, and the usefulness of the courts through and by which justice is administered to the people."

*Ray v. State*, (1917) 186 Ind. 396, 404–05, 114 N.E. 866, 869.

The legislature is a regulator of contempt power by the judiciary, but it cannot take the power away or materially impair it. *LaGrange v. State*, (1958) 238 Ind. 689, 153 N.E.2d 593; *Cheadle v. State*, (1886) 110 Ind. 301, 11 N.E. 426; *Holman v. State*, (1885) 105 Ind. 513, 5 N.E. 556; *Little, supra.* IC 31–6–4–6.5(a), which prohibits the secure detention of status offenders alleged to be delinquent children, should not be read to limit the juvenile court's inherent contempt power over status offenders who willfully disobey a court order. Acts constituting contempt may be punished in accordance with the statutory and inherent powers of the trial judge, *regardless of the status of the person in contempt.*[5] See *Bryant v. State*, (1971) 256 Ind. 587, 591, 271 N.E.2d 127, 130 ("the statute giving

---

for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt. No such rule as hereinbefore provided for, shall ever issue until the facts, alleged therein to constitute such contempt, shall have been brought to the knowledge of the court by an information, duly verified by the oath of affirmation of some officer of the court, or other responsible person." IC 34–4–7–8. *See also* IC 34–4–7–9 and IC 34–4–8–1.

3. "Every person who shall be guilty of any wilful disobedience of ... any order lawfully issued by any court of record ... shall be guilty of an indirect contempt of the court ...." IC 34–4–7–3.

4. "Punishments for contempts of court, under this chapter, may be by fine or imprisonment, or both, in the discretion of the court inflicting the same, but no fine shall exceed the sum of five hundred dollars [$500], nor shall any imprisonment extend beyond the term of three [3] months." IC 34–4–7–6.

5. This does not mean juveniles placed in secure facilities for contempt of court should be incarcerated with adult offenders. Judges may look to the Juvenile Code for guidance. *See, e.g.,* I.C. 31–6–4–6.5(b) (juvenile who commits an act that would be an offense if committed by an adult may be securely detained, but "must be restricted to an area ... in which he has no more than incidental contact with persons charged with, imprisoned for, or incarcerated for crimes").

Juvenile Court exclusive jurisdiction over juveniles does not apply to a case of direct contempt in another court, and ... the court in which the contempt occurs has full power to punish the juvenile as it would any other person").

It should be remembered that a criminal contempt proceeding is a separate proceeding from the main action out of which it grows, *Allison v. State ex rel. Allison*, (1963) 243 Ind. 489, 187 N.E.2d 565; *Denny v. State ex inf. Brady*, (1932) 203 Ind. 682, 182 N.E. 313, and the Contempt Statute should be read accordingly. Thus, T. T. has committed two distinct transgressions. True, one of them would be a status offense, an act of delinquency which does not warrant incarceration according to the legislative scheme. But she also has committed a separate offense by willfully defying a lawful court order—an act which warrants a citation for indirect criminal contempt and which subjects her to incarceration for up to three months. Any other interpretation of the Contempt Statute would undermine the trial court's ability to effectively conduct court business.

Had the necessary contempt procedure been followed in this case, the trial court could, in my opinion, have sentenced T. T. to up to three months in a secure facility.