G. FRED COWAN *v.* FREIDA JOAN (COWAN) MURPHY.

[No. 1-475A82. Filed September 2, 1975.]

*Conrad G. Harvey, Young, Harris & Harvey,* of Crawfords-ville, for Appellant.

*Don C. Schmidt, Frank N. Howard, McGaughey, Howard & Morell,* of Crawfordsville, for appellee.

## ISSUES:

LOWDERMILK, J.—The issues presented in this action are:

Whether the action was commenced too late so as to be barred by the statute of limitations under IC 1971, 34-1-2-2(5) (Burns Code Ed.), and whether the judgment was based on insufficient evidence and the trial court erred in its special findings of fact and conclusions of law thereon.

Whether the trial judge committed reversible error in re-opening the cause after both parties had rested and whether his decision is, therefore, unsupportable on the basis of the evidence produced before the case was reopened.

## FACTS:

Defendant-appellant, G. Fred Cowan (Cowan) did, on April 7, 1960, execute a promissory installment note to his then wife, Frieda Joan (Cowan) Murphy (Frieda) whereby Cowan agreed with his then wife, Frieda to repay the loan

within ten years. It is from failure to pay this note that this cause of action has arisen.

The note provided for annual payments of $600.00, payable in equal monthly installments of $50.00 on the first of each month, commencing on May 1, 1960. The note contained the following acceleration clause:

> "[T]hat should any payment due hereunder become more than forty-five (45) days in default, this note in it's [sic] entirety shall become immediately due and payable; . . ."

Five payments on the note were made; the first payment, due on May 1, 1960, was paid on May 5, 1960; the second payment, due on June 1, 1960, was paid on June 3, 1960; the third payment, due on July 1, 1960, was paid on July 6, 1960; the fourth payment, due on August 1, 1960, was paid on February 2, 1961, and the fifth payment, which was due September 1, 1960, was paid on April 13, 1961. Under the terms of the agreement Cowan was in default as of September 14, 1960, which was forty-five days after August 1, 1960, on which date payment had become due. The action was commenced on April 19, 1972, which Cowan contends is more than ten years after the date of default.

## TRIAL:

The only witness called at trial by either side was Frieda. Both sides rested immediately after the close of her testimony. The trial judge ordered the case reopened for further evidence pertaining to the divorce settlement and the disposition of the jewelry store which Frieda had received as part of the settlement and in which the $4,600.00 Cowan had borrowed from her allegedly was invested in merchandise for sale. The parties had separated one week after the execution of the note and the divorce was granted in July of 1960.

At the conclusion of the trial after it had been reopened and further evidence heard, the judge entered his special findings of fact and conclusions of law thereon, together with a judgment in favor of Frieda in the sum of $6,791.50.

## DISCUSSION:

Cowan contends: (1) that the default occurred on June 14, 1961, which was forty-five days after the May 1, 1961, installment became due; (2) and inasmuch as the action was not commenced until April 19, 1972, which is more than ten years after the cause of action accrued, the suit is barred by the applicable statute of limitations (IC 1971, 34-1-2-2 (5) (Burns Code Ed.)).

Said statute reads in pertinent part as follows:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards:

\* \* \*

Fifth. Upon promissory notes, bills of exchange and other written contracts for the payment of money hereafter executed, within ten [10] years: . . ."

The difficulty here concerns the self-actuating acceleration clause in the note, as hereinabove set out. The respective parties each present a wealth of foreign authorities supporting their respective positions that the self-actuating acceleration clause, when activated, does or does not commence the running of the statute of limitations. We find that several Indiana decisions are instructive on this point.

In the case of *McFarland* v. *Christoff* (1950), 120 Ind. App. 416, 92 N.E.2d 555, appellant brought an action on a promissory note and to foreclose a mortgage given on January 20, 1943, to secure the payment of the note. Appellees executed their certain promissory note due three years from date for $5,000, with interest payable semi-annually, and attorney's fees. The note provided appellees could at any time make payments of $100 or any multiple thereof on the principal, and the interest provided for should be paid on the unpaid balance.

". . . This mortgage provided that upon failure to pay said note, or any part thereof, at maturity or the interest thereon, or any part thereof, when due, then said note is to be due and collectible and the mortgage may be foreclosed accordingly." 120 Ind. App. at 419.

The mortgage was duly recorded. However, appellant received nothing in payment on said indebtedness.

On July 20, 1944, appellees made a tender of $5,375 in payment of said note, which payment was refused. On November 6, 1948, appellees tendered the same amount into the office of the clerk of the trial court. The trial court held that appellant was entitled only to the sum which appellees tendered into court.

The court said:

"On the record before us in this case it is apparent the debt which the mortgage secured was past due. As heretofore shown by the special findings, the whole debt became due upon default in the payment of interest when due. Appellees were required to pay interest semi-annually but the findings show that up to the time of tender eighteen months after the execution of the note and mortgage they had paid no interest. *In this case the acceleration clause was absolute and not a mere option in favor of appellant. Therefore, the note and mortgage herein became due after default in interest due July 20, 1943. Buchanan et al. v. The Berkshire Life Insurance Company et al.* (1884), 96 Ind. 510, 520; . . . (Other cases cited omitted.)" (Our emphasis.) 120 Ind. App. at 422.

In *Voris* v. *Ferrell* (1913), 57 Ind. App. 1, 103 N.E. 122, this court said:

"The only serious question relates to the rights of the plaintiff as the assignee of the note and mortgage given by the Ferrells to Milligan. The interest on the note was payable semiannually, and it contained a provision making the whole debt due upon failure to pay any installment at maturity. The first installment was not paid when due and the second installment due on May 10, 1910, was not paid when appellant purchased the note and mortgage on August 26, 1910. *Where an obligation contains such a provision for maturing the debt without requiring the payee to elect to declare the whole debt due before enforcing its collection, default of payment according to the provisions of the instrument makes the whole debt due immediately upon such default. Buchanan v. Berkshire Life Ins. Co.* (1884), 96 Ind. 510, 520; . . . (Other cases cited omitted.)" (Our emphasis.) 57 Ind. App. at 12.

*See, also, Fidelity, etc., Co.* v. *Jasper Furniture Co.* (1917), 186 Ind. 566, 117 N.E. 258; *Stephens et al.* v. *The Huntington*

*and Drovertown, etc., Association* (1881), 76 Ind. 109; *Billingsley and Wife* v. *Dean* (1858), 11 Ind. 331-332; *Ausem* v. *Byrd* (1855), 6 Ind. 476; 21 I.L.E., *Negotiable Instruments,* § 88, Time of Maturity, Acceleraton on Default, p. 489.

In the case of *Moore* v. *Sargent* (1887), 112 Ind. 484, wherein the facts were that the mortgage contained a stipulation written therein to the effect that if the mortgagor failed to pay either of the notes, or any part thereof, at maturity, the entire debt should at once become due and collectible, our Supreme Court said that the provision in the mortgage for accelerating the time when the whole debt should become due and collectible did not make the maturity of the debt evidenced by the second note depend upon the election of the mortgagee. The court further said:

".... The second note became absolutely due upon failure to pay the first note at maturity. According to the terms of the contract, upon the happening of that event, the whole debt became as effectually and absolutely due as if further credit had not been, in any contingency agreed upon. The mortgagor had then the right to pay or tender the whole debt, and by that means suspend the accumulation of interest. . . ."

The trial court, in specification 1 of his special findings of fact, apparently inadvertently misquoted the terms of the note, wherein the court said:

" 'That should any payment due hereunder become more than forty-five days in default, this note in its entirety *should* become due and payable and that the amount due on the note at any time shall be constituted of the unpaid principal plus unpaid interest, calculated in accordance with the terms of agreement, and that the due date of the note under its terms was on or before ten years from date, to-wit: April 7, 1960.' " (Our emphasis.)

It must be remembered that the note itself used the words ". . . this note in it's [sic] entirety *shall* become immediately due and payable. . . ." (Our emphasis.)

The word "shall" has a particular significance in this cause of action. Blacks Law Dictionary, 4th ed., 1951, defines SHALL as follows:

"As used in statutes, contracts, or the like, this word is generally imperative or mandatory. (Cases cited omitted.)

In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative or mandatory. . . ."

*See also*, 21 I.L.E., *Negotiable Instruments*, § 88, p. 488.

In construing the note we have determined that the word "shall" was used in its mandatory sense and that pursuant to the words of the note in its entirety, the parties intended by the instrument to make the whole debt due immediately in the event any payment due thereunder was in default for forty-five (45) days. *Voris* v. *Ferrell, supra.*

Inasmuch as the note was mandatory in nature, the Indiana cases are clear that once the note met the conditions in the acceleration clause, it became immediately due and payable. *Stephens et al.* v. *The Huntington and Drovertown, etc., Association, supra; Billingsley and Wife* v. *Dean, supra; Ausem* v. *Byrd, supra; Voris* v. *Ferrell, supra.* In this case, the first three payments were made late, but not so late as to be in default. The fourth payment was due on August 1, 1960, but was not made until February 2, 1961. The acceleration clause took effect on September 14, forty-five days after the due date, and the note matured as of that date.

Further, the cause of action on the note accrued as of the date of maturity, and consequently, the statute of limitations began to run on September 14, 1960. IC 1971, 34-1-2-2 (5) (Burns Code Ed.).

Frieda contends that her acceptance of the late payments in February and April of 1961 operated as a waiver of the acceleration clause, and thus no cause of action on the note itself accrued until the whole note had become due at the end of the ten year term. Had the acceleration clause been merely optional, as they usually are, her contention would be correct. *See, Huston* v. *Fatka* (1903), 30 Ind. App. 693, 66 N.E. 74. However, we have already held that the acceleration clause in

this case was mandatory in nature, and as such it operated according to its terms regardless of the intention of Frieda. While the parties could have in essence rewritten the terms of the note by mutual agreement, there is no evidence that any such agreement was entered into in this case.

When the indebtedness matured because of default in the payments, it became due for all purposes. The debtor owed the creditor the duty of paying the entire amount at once, and the partial performance of this obligation by the immediate payment of a part of the debt could not have the effect of postponing the maturity of the debt. *Moore* v. *Sargent, supra; Stephens, et al.* v. *The Huntington and Drovertown, etc., Association, supra.*

Our decision that the statute of limitations began to run upon the first default, regardless of whether subsequent payments were accepted by Frieda, is strengthened by the decisions of the courts in two other jurisdictions. *Barnwell* v. *Hanson* (1950), 80 Ga. App. 738, 57 S.E.2d 348; *Miles* v. *Hamilton* (1920), 106 Kan. 804, 189 P. 296, *reh. denied,* 107 Kan. 187, 190 P. 430.

In *Barnwell,* the defendant had executed a note and mortgage on a lot. The note contained a mandatory clause calling for acceleration of the debt should there be a failure to pay interest, taxes, or insurance when due. The interest payments and taxes went into default for 18 months, causing the acceleration clause to take effect. The defendant later paid part of the taxes and interest due.

The court first held

". . . where the acceleration clause in a note or other instrument for the payment of money is absolute in its terms and not optional with the holder, then upon default in the payment of the interest installment the entire debt 'automatically and ipso facto' becomes due and payable, that is, the debt matures, without regard to any affirmative action on the part of the holder to declare same due, or to enforce such provision or insist thereon, which is necessary when the acceleration clause is optional and not absolute."

The court then determined that the statute of limitations

began to run at the time the acceleration clause took effect, and held that

"[T]here was no legal agreement by the holder of the note, either express or implied, which would prevent the entire indebtedness from maturing upon such default by the maker, or prevent the statute from running from the date of such accelerated maturity, in the instant case; nor did acceptance by the holder of the interest payments and of the taxes after due and after default and automatic acceleration of the maturity of the note operate as a waiver or prevent the statute from running."

We believe the same reasoning applies to the case at bar.

Frieda, having waited until April 11, 1972, more than ten years after the date of default, permitted the statute of limitations to run and she is barred from recovery under IC 1971, 34-1-2-2 (5) (Burns Code Ed.).

Inasmuch as this cause must be reversed and it is a general rule of law that where, on appeal, it is determined that the trial court committed reversible error on one point, the appellate tribunal need not discuss the other questions in the case, *Ewing* v. *Timmons* (1963), 135 Ind. App. 274, 278, 193 N.E.2d 497, we will not write on the second issue herein.

CONCLUSION:

Judgment reversed and remanded to the trial court with instructions to vacate the judgment heretofore entered and to amend and correct the special findings of fact and conclusions of law thereon and to enter judgment for Cowan, all in conformity with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 333 N.E.2d 802.